# THE SAVINGS AND LOAN SOCIETY v. WILLIAM THOMPSON, Jr.

| 32 | 347 |
| 104 | 522 |
| 32 | 347 |
| 110 | 149 |
| 32 | 347 |
| 133 | 460 |

A Month.—The month contemplated by the statutes of this State is a calendar and not a lunar month.

Publication of Summons.—A publication of a summons weekly against a non-resident defendant, commencing on the 10th day of January, and ending on the 9th day of April, is a publication of three full calendar months, and the first day of the forty within which the defendant is required to answer is the 10th of April.

Idem.—If the last day of the publication of a summons is in the same week in which the three months expires, the publication is sufficient to give the Court jurisdiction, although this day is less than three months from the first day of publication.

Publication of Summons on Sunday.—If some of the publications of a summons, including the last, are made on Sunday, in the regular issues of the paper, it does not vitiate the service.

Appeal from the District Court, Fourth Judicial District, City and County of San Francisco.

B. S. Brooks entered into a covenant with the defendant, by which Brooks covenanted to sell the defendant a lot in San Francisco, and defendant covenanted to pay him a sum of money when Brooks should procure a judgment against Flanegan and Stevens, and Gorham as assignee in insolvency of Samuel L. Dennison, and their heirs and assigns, quieting the title to the land. Brooks procured the required judgment by publication of summons. He then assigned the covenant to the plaintiff, and this suit was commenced to obtain judgment on the same.

On the trial, plaintiff offered in evidence the judgment roll in the action to quiet title, and defendant objected to its being received in evidence, because the Court had not acquired jurisdiction by the publication of summons. The Court overruled the objection. Plaintiff recovered judgment, and the defendant appealed.

The other facts are stated in the opinion of the Court.

*Wm. M. Pierson*, for Appellant.

In computing time in the Practice Act the first day is to be excluded. (Practice Act, Sec. 530.) If the last day be Sun-

day, it shall be excluded. (Ib.) And the day of service shall also be excluded. (Practice Act, Sec. 24.) The publication commenced therefore on the 11th of January and ended on the 8th of April. Even disregarding this provision of the Practice Act, the publication fell short one day of three calendar months. We contend that the full period of three months must elapse between the first and last publication. No other construction fulfils the language " provided that publication *shall not be less than three months.*" (Practice Act, Sec. 31; *Bunce* v. *Reed,* 16 Barb. 347; *People* v. *Gray,* 10 Abb. Practice, 468; *Early* v. *Doe,* 16 How. U. S. 610.) But if the publication was sufficient it resulted in a service on Sunday. Such service is void. (Judiciary Act, Statutes 1863, p. 343; *Field* v. *Park,* 20 Johns. 140; *Merritt* v. *Earl,* 31 Barb. 38; *Croghan* v. *Livingston,* 25 Barb. 339; *Davis* v. *Fish,* 1 Green, Iowa, 411; *Whitney* v. *Butterfield,* 13 Cal. 341–2.)

*B. S. Brooks,* for Respondent.

The five hundred and thirtieth section of the Practice Act is : " The time within which an act is to be done, as provided in this Act, shall be computed by excluding the first day and including the last. If the last day be Sunday, it shall be excluded." As there was not in this proceeding a "time within which an act was to be done," the section has no relevancy. There is a time " *within which* " the defendant would have to answer, and to that period of time this section would apply. Section twenty-four of the Practice Act provides that the day of service of the summons shall be excluded. What is the day of service of the summons? " In either case the service of the summons shall be deemed complete *at the expiration of the time prescribed by the order for publication.*" (Pr. Act, Sec. 31.) The time did not expire till the 10th of April, Monday. The appellant's counsel contends " that the full period of three months must elapse between the first and last publication." The authorities which he cites do not sustain his position, and there are others which are decidedly against him. By the Practice Act (Sec. 31) the summons is

required to be published once a week for three months, and the question is, what is meant by this phrase? The position which we assume is that publication on one day in each week during the three months is sufficient. (*Ronkendorff* v. *Taylor's Lessees*, 4 Pet. 361; *Sheldon* v. *Wright*, 7 Barb. 46; *Bachelor* v. *Bachelor*, 1 Mass. 255.) But, secondly, is the matter of publishing a summons in a newspaper a judicial proceeding in the sense of the Judiciary Act? In *Macnally's Case* (9 Coke, 67 *a*) it was declared that ministerial acts could be done on Sunday. In the case of *Swann* v. *Broome*, 1 Wm. Blackstone, 526, is a very curious discussion of the history of the matter, and of what things may and may not be done on Sundays; from which it appears that many acts relating to proceedings in Courts may be done on that day, by a canon of the church and an imperial edict still extant in the Theodosian Code, and by the laws of Edward the Confessor; and ever since that time Sunday was *dies non juridicus*. The matter is also fully discussed in *Strong* v. *Elliot*, 3 Cowen, 29, where it was held that, though an award cannot be given on that day any more than a judgment, yet a *verdict* may be recorded on that day. The same was held in *Van Cortlandt* v. *Underhill*, 15 Johns. 416. In *Hotaling* v. *Osborn*, 15 Johns. 119, there was a verdict and judgment on Sunday. The Court say: "It was proper to receive the *verdict*, presuming that the jury were impanelled before Sunday commenced; but it was illegal to enter the judgment on Sunday." To the same effect is *Butler* v. *Kelsey*, 15 Johns. 177; *Hindehaper* v. *Cotton*, 3 Watts, 56; *Van Riper* v. *Van Riper*, 1 South. 156; *Baxter* v. *The People*, 3 Gilman, 385; *Cory* v. *Silcox*, 5 Porter, Indiana, 373; *Heller* v. *English*, 4 Strobhart, 586; *True* v. *Plumley*, 36 Maine, 1 Heath, 466; *Webber* v. *Merrill*, 34 N. H. 202, and *McCorckle* v. *State*, 14 Ind. 39.

By the Court, SAWYER, J.:

The only question in this case is, whether a summons was published " once a week," not less than " three months," within the meaning of the provisions of the thirty-first section of the Practice Act.  It was published on the 10th, 15th, 22d and 29th of January; the 5th, 12th, 19th and 26th of February; the 5th, 12th, 19th and 26th of March, and the 2d and 9th of April, 1865, the first publication being on the 10th of January and the last on the 9th of April.

The month contemplated by the statute is a calendar, not a lunar month.  (*Sprague* v. *Norway*, 31 Cal. 173.)  This is conceded.

The five hundred thirtieth section of the Practice Act has no application.  There is no time " within which an act is to be done," within the meaning of that section.

The defendant being a non-resident of the State, the summons must be published " at least once a week," and the publication " shall not be less than three months."  From the 10th of January to the 9th of April, inclusive, are three full calendar months.  We can no more include the 9th of January, or the 10th of April, in the intervening three calendar months, than we can get two Sundays or two Saturdays into one week.  The publication was made on the 10th of January and on the 9th of April, and once in every intervening week, making in all a publication in each of fourteen consecutive weeks.  The period of publication, then, covered the entire period of three calendar months.  The publication, therefore, could not be " less than three months."  If the language of the statute had been, that " the summons shall be published daily, and the publication shall not be less than one month," and a summons had been published on every day in the month of January, for example, we apprehend that no one would contend that it had not been published a full month.  The cases cited are not upon precisely similar provisions, and are not in point.  Neither does the point decided in any one of them sustain the precise view maintained by appellant.  The

cases arise upon notices of Sheriff's sales, notices in insolvent cases, etc., under statutory provisions requiring notice to be published " weekly for six weeks," " three months," and the like, as the case may be, before some act to be done on a designated day of which notice is given. In no one of the cases was it held that the " six weeks " or " three months " must elapse between the first and last publication, or that the notice had not been published a sufficient number of times, or to a sufficiently late day. No such question was in any of the cases. The difficulty was, not that the notice had not been published the full number of times, or to a sufficiently late day, but that sufficient time had not elapsed between the first publication and the time appointed for doing the thing of which notice was given. Take for example the case of *Early* v. *Doe*, 16 How. U. S. S. Ct. 611, which was a tax sale. The statute required notice of the sale to be published " once in each week for at least twelve successive weeks." The day of sale appointed by the notice was the 15th of November, 1848. The first and last publication were on the 26th of August and the 15th of November—the day of sale ; and the Court in their calculation include both days. From the 26th of August to the day of sale and last publication—the 15th of November— there were but eighty-two days—not twelve full weeks, or eighty-four days. Now the difficulty was, as stated by Mr. Justice Nelson, not that the notice had not been published a sufficient number of times, or continued to a sufficiently late period ; but that twelve full weeks notice had not been given —that is, twelve weeks from the first publication to the day appointed for the sale, which happened in this instance to be the last day of publication also. (Ib. 615–16.) But suppose the day appointed for the sale had been the 18th of November, instead of the 15th, and the publication had been precisely the same as it was—the last falling on the 15th, and that it was in the same week with the 18th—there can be no doubt that the sale would have been upheld. There would, then, clearly have been twelve full weeks notice from the first publication to the day of sale, and the notice would have been

published once in each week embraced in that period; yet there would have been no more time between the first and last publication than there was in the case as it is presented. That such would have been the ruling in the case supposed is evident from the reasoning in the case cited and the decision of the same Court construing the words "once a week," in *Ronkendorff* v. *Taylor's Lessees,* 4 Pet. 361. The questions presented in the other cases cited by the respective counsel are similar to that in *Early* v. *Doe.* They are: *Sheldon* v. *Wright,* 7 Barb. 45; same case affirmed on appeal, 5 N. Y. 517; *Olcott* v. *Robinson,* 20 Barb. 149; same case reversed in 21 N. Y. 153; *Chamberlain* v. *Dempsey,* 13 Abb. 422; *Bachelor* v. *Bachelor,* 1 Mass. 256; *Bunce* v. *Reed,* 16 Barb. 351; *People* v. *Gray,* 10 Abb. 469; *Anonymous,* 1 Wend. 90. These cases are in conflict upon the points to which they are cited, and the later cases in the Court of Appeals appear to be against appellant. But none of the points decided are inconsistent with the views we have expressed in this case, and it is unnecessary now to determine which is right. In these cases the Judges take care to confine their decision to the point that the full time required by statute must intervene between the first publication of notice and the day appointed for the performance of the act designated in the notice.

We think that the summons had been published for three calendar months at the close of the 9th day of April, and that the first day of the forty within which the defendant was required to answer was on the 10th of April. But even if the three months for publication did not expire till the 10th of April, there was no necessity for another publication. The 10th was in the same week with the 9th, and the summons had been published in that week. It had been published once in every one of the weeks that could by any possibility, in whole or in part, be brought into the three calendar months. This is sufficient under the decision in *Ronkendorff* v. *Taylor's Lessees,* 4 Pet. 361, and we know of no decision to the contrary. The only difference it could make would be, that the forty days within which the defendant is required to answer

would not commence to run till the 11th, instead of the 10th, for then the service would not be complete till the expiration of the 10th. The summons does not arbitrarily fix the day for answering, but requires the defendant to answer within a given number of days after the service of summons. (Practice Act, Secs. 24 and 25.) The day for the defendant to act is left open by the summons, depending upon the time when the service is made, or is complete. It is a matter of no consequence, then, whether the service was complete on the expiration of the 9th or 10th of April, for the time within which to answer did not begin to run till service was complete. The judgment in the case was not rendered till the 26th of December, 1865, long after the time for answering expired, whether it commenced to run on the 10th or 11th. When the default was entered does not appear, and the presumption is, nothing to the contrary appearing, that it was not entered till due. On either hypothesis, therefore, there was a valid service.

Some of the publications, including the last, were on Sunday—the paper in which publication was made being regularly issued on Sundays as well as on week days. We do not think this fact vitiates the service on the ground that, under our statute, Sunday is *dies non*. The service is not actual and is not made by a single act. It consists of a series of acts running through a long period of time, and the specific acts required by the statute have been performed according to both the letter and spirit of its provisions.

The judgment is affirmed.

Mr. Justice RHODES did not express any opinion.