DANIEL SCOTTEN ET AL. v. LOUIS P. SUTTER ET AL.

*Acceptance of Merchandise—Review of Findings—Assumpsit.*

Assumpsit will not lie for the price of goods unless the title has so passed as to deprive the plaintiff of the right to sell them.

Acceptance of merchandise under a contract that is invalid by the statute of frauds, cannot be implied from a tender of such merchandise, made on one side without referring to any contract, and from a refusal on the other to take it then for want of time to attend to it, with a promise, however, to send for it when it should be needed.

The Supreme Court will not, in suits at law, look into the evidence upon which a finding of fact is based, except where the evidence has all been returned on an exception that the finding has no evidence to support it.

The defendant in error is in no position to dispute a finding of the court below and claim that the error therein rendered the other errors immaterial.

Error to Superior Court of Detroit.    Submitted October 16.    Decided October 30.

ASSUMPSIT on common and special counts, by Sutter Brothers, cigar manufacturers, who claimed that Scotten,

Lovett & Co. had bargained with them for 10,000 "Ranger" cigars at $25 per thousand, and 5000 "Hiawathas" at $50 per thousand, part of which they afterwards refused to accept and pay for. Plantiffs gave evidence tending to show that the order for the cigars was given Sept. 3, 1874; that they had made the same brands before for the defendants and knew just what they wanted, and no fault had ever been found with the goods; that within about 30 days from the time the order was given, the cigars were made and packed in boxes duly branded, and labeled with defendants' labels, and 4000 of them were sent in a hand cart to defendants' place of business, in charge of Charles Compt, a boy employed by the plaintiffs; that Mr. Lowry, one of the defendants' firm, told Compt he would take the cigars as soon as he could,—the firm were taking stock and had no time, but as soon as they would need them, would send for them right away; that Compt took the cigars back again and reported to his employers; that plaintiffs then held the cigars for defendants' use and subject to their order; that on April 15, 1875, defendant took and paid for 1000 "Hiawathas"; on May 25, 1875, 2000 "Rangers" and 2000 "Hiawathas"; and in November, 1875, 1000 "Hiawathas" and 2000 "Rangers"; that in July, 1876, plaintiffs sent the rest to defendants' place of business, and the latter declined to receive them. Defendants gave evidence tending to show that no absolute order was ever given for the purchase of the cigars; that when a part of them were brought to their place of business by Compt, they refused to take them and ordered them sent back; that afterwards, on being urged by plaintiffs, they said they would take the cigars as fast as they could sell them, and would urge their traveling man to sell them, and that the cigars subsequently taken were purchased under this agreement. The court below charged that the contract for the sale of the cigars was invalid because not in writing, unless there was an acceptance by the defendants of part of the goods sold, or a payment by the defendants of the purchase money or some portion thereof, and that the sending by defendants at three several times for portions of the cigars

and paying for them could not under the circumstances be construed as an acceptance of any portion of the goods under the agreement.     It also charged as follows:

"There was a transaction which may have some bearing upon this point of acceptance of the goods either in whole or in part; I refer to what took place when the goods or a portion of them were taken by the boy to the defendants' place of business. Upon this point, the testimony is found mainly in the statements of Charles Compt and Mr. Lowry. The boy testified he took a portion of these goods over there in a buggy or hand-cart by direction of the plaintiffs; as he was delivering them at the store of the defendants, Lowry, one, of the defendants, told him they did not have any time to take them then, but would take them as soon as they could.     He says the excuse given for not taking them was that they were taking stock and hadn't time to attend to it, but as soon as they would need them, they would send for them right away.     Mr. Lowry testifies that he has no recollection of any such conversation, and he swears that no such conversation took place.     *     *     There is other testimony stating that Mr. Lowry was not there at the time, and I shall leave it to the jury and their own recollection of the evidence to decide whether Mr. Lowry was present, and if so, what conversation, if any, took place between Mr. Lowry and the boy who took the cigars to defendants' store.     If you shall find that this conversation did not take place, then your verdict will be for the defendants.     If on the other hand you find that it did take place, then there will be a still further matter to consider, namely, whether it was the intention of Mr. Lowry at this time to accept the goods and whether the language which he used was such as to lead the Sutter Brothers to infer, for it seems to have been reported to them, that there was an intention to accept the goods, and that the Sutter Brothers should simply hold them as the agents and for the benefit of Scotten, Lovett & Co.     If such was the intention or if such was the inference to be derived from the language, then Scotten, Lovett & Co. would be bound by such acceptance.     If on the other hand, such was not the intention, then although you shall find that this conversation took place, they will not be bound by it."

The jury found for the plaintiffs for the whole amount they claimed, which was $290.83, and defendants brought error.

*Walker & Kent* for plaintiffs in error. When a sale comes within the statute of frauds, title does not pass unless part of the goods are accepted and received. Benj. on Sales, § 140; *Caulkins v. Hellman,* 47 N. Y., 449; *Prescott v. Locke,* 51 N. H., 100. Acceptance lies in some act that unequivocally shows the buyer's intention to take the goods at once, Chitty on Cont., 390; there can be no acceptance until there has been delivery, or so long as the seller retains his lien for the price. Browne on Stat. of Frauds, § 317, and it cannot rest in mere words, *Shindler v. Houston,* 1 Comst., 261; *Alderton v. Buchoz,* 3 Mich., 322. There is no receipt of the goods until they are in the vendee's actual control, and the vendor has waived his lien for the purchase money, Benj. on Sales, § 187; *Marsh v. Rouse,* 44 N. Y., 643.

*Griffin & Dickinson* (on brief) for defendants in error, urged that the contract was not within the statute of frauds and cited *Towers v. Osborne,* 1 Strange, 506; *Clayton v. Andrews,* 4 Burr, 2101; *Groves v. Buck,* 3 M. & S., 178; *Eichelberger v. M'Cauley,* 5 H. & J., (Md.), 213; *Crookshank v. Burrell,* 18 Johns., 58; *Sewall v. Fitch,* 8 Cow., 215; *Donovan v. Willson,* 26 Barb., 138; *Parker v. Schenck,* 28 Barb., 38; *Mixer v. Howarth,* 21 Pick., 205; *Spencer v. Cone,* 1 Met., 283; *Cummings v. Dennett,* 26 Me., 397. To the proposition that actual delivery is not necessary to transfer title, they cited the cases reviewed in the opinion, also *Rugg v. Minett,* 11 East, 210, and *Groff v. Belche,* 62 Mo., 400; to the point that there may be an acceptance of the goods within the meaning of the statute without any examination of the goods by the buyer or any act on his part to preclude him from contending that they do not correspond with the contract, *Morton v. Tibbett,* 15 Q. B., 428; Langdell's Select Cases on Sales, 195.

COOLEY, C. J. I. The Superior Court having held that the contract sued upon was within the statute of frauds, but having also submitted the case to the jury under instructions which permitted them to find that the cigars had been

37 MICH.—67.

accepted, and the jury having found for the plaintiffs accordingly, it is now urged on behalf of the plaintiffs that whatever errors the court may have committed in its instructions are immaterial, because in fact the contract was not within the statute of frauds, and this court must so find from the record. In pressing this view upon our attention, counsel overlook the fact that the contract is to be arrived at as a deduction from oral evidence; and that this court is not at liberty to draw inferences of fact in cases at law, but must take the findings sent up from the court below as conclusive. This is always the case except where the evidence is all sent up on an exception that the finding has no evidence to support it. But as the plaintiffs are not the parties alleging error, they are not in position to raise any such question here, and if they were, it would be without avail as the defendant's evidence went to a denial of the contract the plaintiffs relied upon.

II. The principal question on this record is whether the judge was correct in leaving it to the jury to find an acceptance of the cigars from what took place at the time the witness Compt took to the place of business of defendants the 4000 cigars in a hand cart. From the evidence of this witness it appears that defendants did not take the cigars at that time, but Mr. Lowry, one of the defendants, told him he would take them as soon as he could; that defendants were then taking stock and had no time, but as soon as they would need them, would send for them right away; whereupon the witness took back the cigars to the plaintiffs. This transaction, it is claimed, was not only a clear manifestation of an intent on the part of defendants to take the 4000 cigars, but to take all the cigars they had ordered; and was sufficient within the former decisions of this court to pass the title. *Whitcomb v. Whitney*, 24 Mich., 486; *First National Bank of Marquette v. Crowley*, Id., 492. It is to be observed of this evidence that it does not indicate an understanding that the goods were then accepted and taken, and merely left in plaintiff's hands for convenience, but rather a promise to send for them as the

defendants should need them. Now if the first promise was invalid because not in writing, the second promise, which was also not in writing, could be no better; it would be invalid on the same grounds precisely as the first. It is also to be observed of Compt's evidence, that it does not appear from it that he said any thing whatever about delivering the 4000 cigars on any contract; he only takes over that number of cigars and offers them to the defendants, who assign a reason for not then taking them, but are as silent as Compt is about any bargain for more. It would seem, therefore, that if what was done and said was equivalent to an acceptance of any cigars, it could only extend to the 4000 then offered; and the proofs of the plaintiffs show that more than this number were subsequently received by the defendants and paid for. It may therefore well be said by the defendants that they fully complied with and carried out any understanding which could justly be implied from what took place when Compt came to their place of business as stated.

The cases which are cited in support of the rulings below do not seem to us to warrant the deductions we are asked to make from them. *Elmore v. Stone*, 1 Taunt., 458, was a sale of horses by a livery stable keeper to a person who ended the negotiations by saying that "the horses were his but that as he had neither servant nor stable, the plaintiff must keep them at livery for him." There the property was fully identified, designated and set apart, and the vendor, it is evident, became in respect to them a bailee from the moment the transaction took place, and entitled as such to charge for services and expenses. *Marvin v. Wallis*, 6 El. & Bl., 726, does not differ from that case in any essential feature. *Turley v. Bates*, 2 H. & C., 200, was a sale of a heap of fire clay by the ton, and the question in dispute was, whether the title had passed before the clay was weighed out. It was held that it might if such was the intent of the parties. This case was cited with approval in *Lingham v. Eggleston*, 27 Mich., 324, 329, with several others supporting the same doctrine, including *Young v. Matthews*, L. R. 2 C. P., 127, on which the plaintiffs also

rely, and which recognizes the same doctrine but goes no farther. The point of these cases is that actual delivery is not absolutely essential to pass the title to goods sold, and it may pass even though something still remains to be done to determine the price to be paid, if such is the clear understanding of the parties. *Rohde v. Thwaites*, 6 B. & C., 388, is more like the present than is any of the other cases. The bargain there was for twenty hogsheads of sugar to be taken from a large quantity in bulk. Four hogsheads were filled up, delivered and accepted; the other sixteen were then filled up by the vendor, and the vendee notified and requested to take them away, which he said he would do as soon as he could. It was held that the title to all of them had passed. The difference between that case and the present is vital; for while in that case the vendee recognized what was set apart for him as being his under his purchase, in this case there is no pretense of such a recognition, and had the plaintiffs sold off at any time all their stock of cigars, there would not have been, so far as we can see, the least plausibility in any claim on the part of the defendants that they might follow and reclaim any of them as their property, had they seen fit to make such a claim. But unless the title passed so as to take from the plaintiffs the authority to sell, it is manifest that this action cannot be supported. *Goddard v. Binney*, 115 Mass., 450, on which the plaintiffs rely with some confidence, lays down no doctrine important to this case which differs at all from the views of this court as expressed in *Lingham v. Eggleston, supra,* and in *Hatch v. Fowler*, 28 Mich., 205, and *Wilkinson v. Holiday*, 33 Mich., 386, which follow it. Neither these cases nor the one in Massachusetts afford as we think any support to the rulings below.

The judgment must be reversed with costs, and a new trial ordered.

GRAVES, and CAMPBELL JJ., concurred.

MARSTON, J., did not sit in this case.