---

(Superior Court of Cincinnati.)
Special Term 1901.
(Before DEMPSEY, JACKSON & MURPHY, JJ.)
THE CITY OF CINCINNATI et, al. v.CALVIN M. FENNER.

---

An advertisement for the sale of municipal bonds under the provisions of the act of April 26, 1898 (O. L., Vol. 93, p. 374), becomes effective after the fourth insertion.
(For decision at Special Term, by Smith. J., see ante, p. 340.)

---

MURPHY, J.;JACKSON, J.,concurring; DEMPSEY, J., dissents.

This is a proceeding in error to reverse the judgment of this court in Special Term.

The action below was by a tax-payer, to enjoin the city of Cincinnati and the Board of Public Service of said city from awarding certain street repair bonds which the said Board of Public Service proposed to issue, pursuant to the act of April 26, 1898 (O. L., Volume 93, page 374). Ths act authorized the administrative board of the city to issue bonds not to exceed, in any one year, the sum of $100,000, to be used for the repair of a certain class of streets, alleys, etc. Section 5 of said act is as follows:

"The Board of Administration or Board of City Affairs, or their successors in office, shall receive bids for said bonds from time to time as they are issued, after advertising the same for sale once per week for four consecutive weeks on the same day of the week." * *

The Board of Public Service of said city advertised for proposals for he sale of $100,000 of said bonds on the 8th, 15th, 22d and 29th of December, 1900, designating December 31, 1900. at 12 a. m., as the time when said proposals would be received by the said Board of Public Service.

The question is as to the meaning of the words, "after advertising the same for sale *once per week for four consecutive weeks on the same day of he week.* Does it mean that the advertisement is complete and effective after the fourth insertion, or it is complete and effective only after four full weeks, or twenty-eight days.

This precise question has not been decided in Ohio, so far as we are aware, but there are decisions in many states upon the question and in the Supreme Court of the United States.

It is necessary to note the verbal difference in the statutes regarding this subject. In many states the language employed is the same, or substantially the same, as in the act before us, namely, "Once a week for ' * * * consecutive weeks;" while in others the language used is "not less than * * * * weeks." or, "at least once a week for * * * * weeks." Where these latter forms are used, it is conceded that the full number of days constituting the number of weeks must elapse before the advertisement is complete or effective. Finlayson vs Peterson, 5 North Dakota, 587; Parsons vs Laning, 27 N. J. Eq.,70; Wampole vs Foote, 2, Dakota, 1 ; Miller vs Pearce, 2 Sup. Ct. Rep., 44; Earley vs Doe, 16 Howard, 610.

Justice Wayne, in deciding the latter case, says:

"The language of the statute regulating the notice to be given is in these words: "That public notice of the time and place of sale of all real property for taxes due the corporation of the city of Washington shall be given hereafter by advertisement inserted in some newspaper published in said city once in each week for at least twelve consecutive weeks.' * * * We do not doubt if the statute had been 'once in each week for twelve successive weeks,' a previous notice of the particular day of the

sale having been given to the owner of the property, that it might very well be conceded that twelve notices in different successive weeks though the last insertion of the notice for sale was on the day of sale,was sufficient. But when the legislators used the words 'for at least twelve successive weeks,' we can not doubt that the words, 'at least,' as they do in common parlance, mean a duration of time that there is in twelve successive weeks or eighty-four days."

Where the language used in the statute is the same or similar to that used in the act under consideration, there is great diversity of opinion and decided conflict in the decisions.

S. & L. Society v. Thompson 32 Cal., 347; Decker v. Myles, 4 Colorado, 560; Knowlton v. Knowlton, 155 Ill., 158; Banta v. Woods, 32 Ia., 469; Sweet v. Sprague, 55Me., 190; Haywood v. Russell, 44 Mo., 252; Frothingham v.March, 1 Mass., 247; Dexter v. Shephard, 117 Mass., 480; Alexander v. Bell, 26 Neb., 68; Olcott v. Robinson, 21 N. Y.Rep., 368; McKee v. Meredith, 192 Pa., 164; Boyd v. Sup. Court, 6 Wash., 352, and Marling v. Robrecht, 13 W. Va., 440, hold that the advertisement is complete and effective after the last insertion of the advertisement. And we think to the same effect is Early v. Doe, 16 Howard, *supra,* which is one of the authorities cited and relied upon by the defendant in error.

To the contrary are Bacon v. Kennedy, 56 Mich., 329; Boyd v. McFarlin, 58 Georgia,208; Meredith v. Chaney, 59 Ind., 466; Pratt v. Linkom, 21 Minn., 142; Davis v. Robinson, 70 Texas, 394; Martin v .McDirmid, 55 Ark., 213; Dillard v. Krise, 86 Va., 410; Reed v. Sexton, Adm., 2J Kas., 195.

In addition to these authorities the defendant in error claims that the following cases sustain his contention.

Cox v. North Wis. Lumber Co.; 82 Wis., 141. But inasmuch as this point was not in the case, any language used by the court on the subject is mere dictum.

Market Nat. Bank v. Pacific Nat. Bank, 89 N. Y., 397. But it is distinctly stated that Olcott v. Robinson, 21 N. Y., *supra,* is not overruled, but, on the contrary, the conclusion reached is by virtue of the change in the wording of the statute.

Trust Co. v. R. R. Co., 139 U. S., 137. All that this case decides is that the statute therein construed meant calender and not lunar months.

It may be useful to examine the statutes of Ohio for the purpose of seeing what phrases have .been used by the legislature to express. duration of time in notices by advertisement, and·how the different expressions have been construed.

Section 5050, Revised Statutes of Ohio, provides for constructive service, and says, "The publication must be made for six consecutive weeks" * * * The legislature itself interprets the meaning of six consecutive weeks in the very next section (5051), which says that "service by publication shall be deemed complete at the last publication."

Section 5385, providing for notice of the sale of goods on execution requires that "public notice shall be given of the time and place of sale *at least* before the day of sale, which notice shall be given by advertisement published in a newspaper," etc.

In the sections relating to divorce and alimony, section 5693 provides for constructive service, as follows: "When the defendant is not a resident of this state, or his residence is, unknown, notice of the pendency of the action must be given by publication, as in other cases." Which means, I take it, that the publication shall be as is provided for in section 5050, Revised Statutes. We have seen, by section 5050, constructive service is complete at the date of the last publication. In divorce and alimony, the legislature desired that publication should not be complete until after six weeks had elapsed from the date of the first publication; and it puts that interpretation upon the language of section 5693 in the next section (5694), which provides that the case may be heard and decided at any time after the expiration of six weeks from * * * the first publication of notice.

Section 5393, providing notice of the sale of lands, says:

" Lands and .tenements taken in execution shall not be sold until the officers cause to be given public notice of the time and place of sale for *at least* thirty days before the day of sale, by advertisement in a newspaper printed and of general circulation in the county. * * * or if the lands and tenements taken in execution are situated in any city of this state, and there is published both a daily and weekly edition of the newspaper selected for such advertisement and the circulation of the daily in snch city exceeds that of the weekly, it shall be sufficient to publish the advertisement in the daily once a week for five consecutive weeks before the day of sale, each insertion to be on the same day of the week."

In Hagerman v. Ohio B. & S., 56 O. S., 156, that part of section 5393 providing for publica--

tion in a daily newspaper "once a week for five consecutive weeks before the day of sale, each insertion to be on the same day of the week," is construed, and it is held that such advertisement is complete and effective after the last insertion. It may be said that the court had in mind that the limitation of "at least thirty days,' contained in the earlier part of the section, controlled, and that the legislative intent was that five consecutive weeks, and at least thirty days should mean the same thing. But this is precisely what the plaintiff in error is contending for. Here, at least, are two instances in our statutes where notice by advertisement is, by manifest legislative intent, or judicial interpretation, deemed complete after the last publication; and in each case where the contrary was intended, unmistakable language is used by the legislature to express that purpose.

To the same effect is section 1695, providing for the publication of ordinances. The legislature, intending that ten days should elapse from the first publication until the ordinance goes into effect, uses this language:

"No ordinance shall take effect until the expiration of ten days after the first publication of such notice.'

There is no pretense that the act authorizing the issue of these bonds is unconstitutional, or that the fund so raised will be misappropriated, misapplied or wasted, or that the city will lose by reason of the sale of these bonds. On the contrary, it can be assumed that the city needs the money, and that if not available now a greater sum wil ultimately have to be expended.

In the judgment of the majority of the court, the weight of authority is that the advertisement for the sale of the bonds became effective after four insertions.

We think the court below erred in overruling the demurrer; and, for that reason, the cause is reversed.

Charles J. Hunt and Charles W. Scott, for plaintiff in error.

Ellis G. Kinkead, for defendant in error.

---

Dissenting opinion of Dempsey, J.

Not being in accord with my brothers of the General Term in their view of the true meaning of the statute under consideration in this case, it is but proper that I should present my own views and the grounds upon which they are based.

The great object in the construction of all statutes is to ascertain the intention of the legislature and to carry that out. The first gen-

ral rule of construction is that the intention is only to be derived from the words used, and not from the speculation *aliunde* and if the language used be ambiguous, then there is no room for construction. The second general rule is that if there be doubt arising from the language used, then the purpose and object of the statute must be looked to, as an aid in ascertaining the intent.

Subsidary to these two cardinal rules is this one: The whole of a statute, or section, as the case may be, must be taken and construed together.

Now, let us take the whole of that paragraph of section 5, which is under contention, and read it in the light of the foregoing rules:

"Section 5. Said Board of Administration * * * * shall receive bids for said bonds, from time to time as they are issued, after *advertising the same for sale once per week for four consecutive weeks,* on the same day of the week, in some newspaper of general circulation in such city, and shall sell the same for not less than the par value thereof to the highest bidder."

Before the reception of the bids was at all authorized there must have been made an advertisement, i. e., a public announcement, of the intended sale of the bonds, which announcement must have been made: (1) once per week; (2) for four consecutive weeks; (3) on the same day of the week; (4) in some newspaper of general circulation in such city. The announcement must have been made once per week for four cousecutive weeks *before* the reception of the bids.

Now, what is meant by "week" and by "four consecutive weeks" in this statute? There are but two definitions of "week" applicable to the provisions of this statute, and neither one of them will justify the rule of construction adopted by the majority of the court, although, curiously enough, under one definition, by reason of the peculiar facts of this case, the result in this case would be the same as that reached by the majority of the court. Primarily, the word "week" means a period of seven days, of which the days are numbered or named in like succession in every period. In general Jewish and Christian belief, it is founded on the creation of the world in six days, (according to the account in Genesis), with a succeeding seventh day of rest. In English these days were designated Sunday, the first day; Monday, Tuesday, Wednesday, Thursday, Friday and Saturday, the seventh day;

and the period of time from Sunday to Sunday was known as "the week." By gradual extension of the meaning, the word "week," came to mean any period of seven successive days (see Century Dictionary—"Week"). Now, in which sense, primary or extended, was the word used in this statute? If we take the extended sense, then there must have elapsed after the first announcement a period of four times seven days before the board could receive bids. If we take the primary meaning of the word, then the period of four weeks is to be reckoned as from Sunday to Sunday, and the number of days' notice will be more or less depending upon the day of the week selected for the first announcement. To illustrate: Take the facts of this case. The first announcement of the intention to receive bids was made December 8, 1900, which was Saturday; the succeeding three announcements were of course, on Saturday also, and the bids were to be received on December 31st, which was Monday. Now, reckoning the four weeks by Sundays, or from Sunday to Sunday, the board would have been authorized to receive the bids on the 31st, and the advertisement would have been effective. That result works itself out in this way: Saturday, the 8th, day of December, was the last day of its week, and the Sunday, the first day of that week, was the 2d day of December; hence, the 9th, 16th, 23d and 30th days of December fell on Sunday, too. Hence, reckoning by Sundays the 31st day of December came after the expiration of the four weeks or advertisement, although only twenty-three days after the first announcement.

Suppose, however, the first announcement had been made on Monday, December 3, 1900; under the rule announced by the majority of the court, bids could have been received on December 25, 1900, assuming it to be a business day, but under the rule of reckoning by Sundays, they could not have been received until the 31st, making, in this instance, twenty-eight days after the first announcement. Under the rule announced by the majority of the court, twenty-two days' notice is sufficient to authorize the board to act: under the rule of reckoning by Sundays, the time would vary form twenty-two to twenty-eight days, depending always upon the day of the week selected for the first announcement; under the secondary definition of "week," the time would always be twenty-eight days.

Now, my brethren of the General Term, in the rule adopted by them, destroy the force and

significance to be attached to the phrase "for four consecutive weeks," and give a meaning to the word "advertising" altogether too restricted and not warranted by its etymology. Under their construction "advertising' is the mere insertion of the notice in some newspaper, and the intendment of the statute is accomplished when four such insertions, at intervals of a week apart, have been made. But "advertising" has a much broader signification than this one given to it. Originally it meant "noticing" or "observing," but gradually became extended until now it means "making public intimation or announcement of anything," whether by publication in newspapers, or by handbills, or by oral proclamation, and the idea underlying it has reference not to the vehicle or instrumentality used for getting the notice before the public, but rather to the diffusion, to the bringing home to the public, of the information or matter contained in the notice. Now, the extent of this diffusion of information will in some measure depend upon the length of time the advertising is carried on. The statute, by requiring the advertising to be done in some newspaper of general circulation in said city, prescribes the vehicle through which the announcement shall be made to the public, and by requiring that it shall be done "for four consecutive weeks" prescribes the length of time during which the information to be imparted must be permitted to be diffused among the public. Now, whether the "four weeks" be calculated by the rule of Sundays, or by the rule of any seven consecutive days, the construction adopted by a majority of the court ignores the fourth week of the advertising, and makes the efficacy of the public notice justifying action by the board to depend upon the last insertion or publication of the notice in the newspaper; that is, upon the vehicle or instrumentality by which the information in the notice is in part conveyed to the public. No reading of the statute will justify this construction. Whether the phrase "for four consecutive weeks" be read as modifying singly the word "advertising" or as modifying the phrase "once per week,' the provision is plain that it must be "for four consecutive weeks" *preceding* the reception of bids, and the reception of the bids can not be had until after the expiration of full "four consecutive weeks" from the first publication of the notice.

As to the rule by which "the weeks" shall be reckoned regard must be had to the sense in which the term was used, whether general or

specific. If I say that I will do a thing this week, the term is used specifically, and I must do the thing before next Sunday; but if I say I will do the thing within a week, then the term is used generally, and I have full seven days in which to do it.

In this statute the only place in which the word "week" is used in a specific sense is in the phrase "on the same day of the week," and that is made specific by reason of the necessity of fixing a specified day for the weekly insertions of the notice. The statute, being prospective in its operation, it is apparent that the legislature could and did have in mind no specific week in which the board was to start the sale of these bonds, and certainly no specific day on which the advertising was to begin. In addition thereto the language of the statute, outside of the clause referred to above, is very general in its terms, and, to my mind, it is obvious that the term "week" was used in its secondary sense of a period of seven successive days. From this it follows that, in my judgment, four periods of seven successive days should have elapsed in this case after the first insertion of notice before the board herein was authorized to receive bids for these bonds, and that such time not having elapsed, the action of the board in attempting to receive such bids was premature and unauthorized.

I am confirmed in the view that I take of this statute when I come to consider the purpose and object to be accomplished by the advertising. The sale of the bonds to the highest bidder was the aim of the statute and the intent of the advertising was to inform those dealing and investing in such securities of the fact of the sale. This was with a view to instigating competition, and advertisement presupposes that some one will see it, and a reasonable time is always allowed for investigation, deliberation and decision. The fourth insertion of the advertisement was, under the law, of as much force and significance as the first; that must be presumed, otherwise the law would not have provided for it. Some investors there might be who would not see the other three advertisements and yet see the fourth, and it was certainly intended that they should have their reasonable time for investigation, deliberation and decision: and yet how could that be if the bids could be received on the day after the last insertion of the notice?

The construction adopted by my brethern of the General Term makes the fourth advertisement but a marker to designate a limit of time beyond which notice was not necessary. I can not reconcile my mind to the belief that such was the intention of the legislature, especially as such an object could have been accomplished in a simpler way.

The authorities of sister states being at variance on this question, I have felt myself free to express my own independent judgment upon it. So far as reference is made to Ohio statutes and decisions, in my judgment, and with all deference to my learned colleagues, the provisions of the attachment and divorce statutes make as forcibly for one side of the contention as for the other; and section 5393, Revised Statutes, and Hagerman v. Ohio B. & S. Co., 25 O. S., 156, decided thereunder, and section 1695, Revised Statutes, are not pertinent to this case, because in these latter statutes the duration of the notice is exactly and specifically provided for, and that is the question we are to answer in this case.

In my opinion, the judgment of the court below ought to be affirmed.

C. J. Hunt and Chas. W. Scott, for plaintiff.

Ellis G. Kinkead and H. K. Rogers, contra.

———

Note—In this case there was a petition in error filed in Supreme Court 45 W. L. B., 238. In their brief in Supreme Court counsel for Fenner. plaintiff in error in Supreme Court, make the following points:

*E. G. Kinkead, H K. Rogers & Chas. E. Ellis*, for Fenner, plaintiff in error in Supreme Court; as to construction of words used in statute in regard to publication of advertisement, contended that in this case it was the intention of the legislature that as a condition precedent to the vesting of right or power in the board to issue the city's bonds there should be public advertisement of the sale of the bonds for at least four weeks or twenty-eight days, evidenced: 1st. By the plain language of the statute; and, 2nd. By the obvious purpose to be served by public advertisement. Citing: 13 Am. & Eng. Enc. Law, 738, and cases there cited from Ga., Ind., Kas., Mich., Minn., N. J., N. Y., Penn., Tex., Wisconsin and U .S. Courts. State v. Tucker. 32 Mo. App., 631; Early v. Doe, 57 U. S. (16 How.), 610; Wilson v. Life Ins. Co., 65 Fed. Rep., 38; Guaranty Trust Co. v. Railroad Co., 139 U. S., 137; (11 S. Ct. Rep., 137); Market Bank v. Pacific Bank, 89 N. Y.. 397; Boyd v. McFarland, 58 Ga., 208; VanAlstine v. People, 37 Mich., 532; Finlayson v. Peterson, 67 N. W. Rep., 953 (5 N. Da., 587; 33 L. R. A., 532.)

2. The intention of the legislature as shown by the purpose of the statute—The object and purpose of all such statutes is to secure notice to the public of the proposed action for

some fixed period of time.   The essence of the requirement is that before the thing authorized to be done is done, *some* time must elapse. Statutes of this character, fixing a period of time during which notice is to be given, are always to be construed most liberally in favor of the persons to be notified; for thus will the purpose of the legislature be most effectually carried out.   Hill v. Faison, 27 Tex., 428; Upington v. Oviatt, 24 Ohio St., 232; Wing v. Cleveland, 14 B., 190; Miller v. Pearce, 2 C. S. C. Rep., 44; Bacon v. Kennedy, 22 N. W. Rep.. 824 (56 Mich., 329); VanAlstine v. People, 37 Mich.. 532; Dillard v. Krise, 10 S. E. Rep., 430 (86 Va., 410); Smith v. Thompson, 3 Ga.,. 23; 16 Am. & Eng. Ency. Law, (1 Ed.), 816; Cox v. North Wisconsin Lumber Co., 51 N. W. Rep., 1130, (82 Wis., 141); Davis v. Robinson, 7 S. W. Rep., 749, (70 Tex., 394); Parsons v. Laning, 27 N. J. Eq., 70; Townsend v. Martin, 17 S. W. Rep., 185, (55 Ark., 192); Martin v. McDirmid, 17 S. W. Rep., 877, (55 Ark., 213); Pennell v. Monroe, 30 Ark., 661; Meads v. Lasar, 28 Pac. Rep., 935, (92 Cal., 221); Loughridge v. Huntington, 56 Ind., 254; Security Co. v. Arbuckle, 24 N. E. Rep., 329, (123 Ind., 518); Reed v. Sexton, Adm., 20 Kas.. 195; Worley v. Naylor, 6 Minn., 192; Pratt v. Tinkcom, 21. Minn., 142; Wampole v. Foote. 2 N. E. Rep., 239, (2 Dak., 1); McDonald v. Cooper, 32 Fed. .Rep.. 735; Freeman on Executions, sec., 285c; Black on Tax Titles, sec., 210; Gilfillin v. Koke, 1· W. L. M., 704; followed in Harmon v. Whittemore, 1 W. L. B., 109.