## William M. Pratt & wife *vs.* James R. Tinkcom.

### Nov. 17, 1874.

Publication of Newspaper—Deposit in Post-office.—Those copies of a newspaper which are sent from the publication office to the post-office, some to be delivered to subscribers in the same city, others to be carried by mail to subscribers elsewhere, are published when deposited in the post-office.

Foreclosure by Advertisement—Insufficient Publication.—A mortgage fell due January 24; notice of foreclosure by sale on March 10 was published for the first time in the edition of a weekly newspaper bearing date January 25, five-sixths of the copies of which were actually published on January 24. *Held*, that the publication in the copies issued on the 24th was premature and void, no default having then occurred; that the publication in the copies issued on the 25th was not a sufficient publication in the edition of that date; that the first legal publication of the notice was that in the next following edition of the paper—that of February 1; that a sale on March 10 would be invalid for want of the six weeks' publication required by Gen. Stat. ch. 81 § 5; and that the original defect in the proceedings was not cured by a postponement of the sale to March 17.

This action was brought, in the district court for Blue Earth county, to restrain the defendant from foreclosing by advertisement a mortgage made by the plaintiffs. Pending the suit, the foreclosure sale took place, the defendant becoming the purchaser, and receiving the usual certificate. Thereupon the plaintiffs served a supplemental complaint, praying that all the foreclosure proceedings be declared void, that the certificate of sale and the record thereof be cancelled, and that the mortgage be adjudged to have been paid, and the mortgaged premises discharged of the lien thereof.

At the trial, before *Waite*, J., the judge found the following facts : Plaintiffs made to the defendant a mortgage to secure their note to him, which fell due January 24, 1873, which was the third day of grace.  On January 23, 1873, notice of foreclosure, dated the 25th, advertising the land for sale on March 10, was drafted and deposited with the *Mankato Record* newspaper, to be published on the next publication day, which, according to the stated day of the newspaper, would be Saturday, the 25th.   The notice was published in the following issue of the paper, all the copies of which were printed on Friday the 24th.  On that day, about 60 to 75 copies were taken to subscribers by the carrier, and about 75 copies were put into the post-office at Mankato for subscribers who received their copies there. These copies were distributed for delivery as soon as received, and a part delivered to subscribers on that day.  All the copies mailed to subscribers, being about 500 copies, were put into the post-office in Mankato on the 24th, between 5 and 6 P. M. ; but none left the post-office until the next day at 7 A. M.   On Saturday the 25th, the carrier delivered about 130 copies to subscribers in Mankato.   This was the ordinary mode of distributing this newspaper to subscribers, though it was not known to the defendant until after the commencement of this action.

On January 25 or 27, the plaintiffs offered to pay defendant's attorney the principal and interest of the note, which he refused to receive, unless they would also pay the accrued printer's fee, and half the attorney's fees on foreclosure.   On February 3, the plaintiffs made a tender of $675, being the principal and interest, which was refused.   The tender was kept good, and the money paid into court.

On March 7, notice was published of a postponement of the sale to March 17, on which day the mortgaged premises were sold at auction by the sheriff to the defendants for $65.70.   The defendant did not pay this amount to the sheriff, but assumed and attempted thereby to reimburse himself certain expenses incurred in making the sale.   There-

after, and on the same day, the defendant demanded and received from the clerk of the court the $675 which plaintiffs had paid into court for his use.

As matters of law, the judge found that the first publication of the notice was made on Saturday, January 25 ; that although most of the copies of the newspaper were distributed on Friday, the 24th, in advance of the regular publication day, still, the distribution of the 130 copies on Saturday, the 25th, completed the publication of that number of the paper ; and that defendant was entitled to the amount of the tender.     Judgment of dismissal was accordingly ordered and entered, from which the plaintiffs appeal.

*Severance & Dickinson*, for appellants.

*Wilkinson & Pitcher*, for respondent.

YOUNG, J.  The 60 to 75 copies of the newspaper delivered in Mankato by carrier, on Friday, January 24, were undoubtedly published on that day.  The same is true of the 575 copies deposited in the post-office on that day, 75 for delivery to subscribers in the city, and 500 to be carried to subscribers elsewhere.     The publication contemplated by the statute, (Gen. Stat., ch. 81, § 5,) is the original issue of the paper from the hands of the person or company of persons by whom or for whom it is printed, and who is commonly styled the publisher or proprietor.  ·When these papers were deposited in the post-office, they passed from the hands and control of the publisher, and nothing was left to be done by him to complete the publication.   They were therefore published, within the meaning of the statute, when thus deposited, there being nothing in this case to rebut the presumption that they were duly delivered, in the usual course of mail, to the subscribers to whom they were addressed.  See *Rex* v. *Burdett*, 4 B. & A. 95 ; *Hinchman* v. *Barns*, 21 Mich. 556. Of the whole edition, from 765 to 780 copies, all but 130 were issued on the 24th, the remaining 130 being delivered by carrier to subscribers on the 25th.

This is not a case where a mortgagee, in the execution of a valid and operative power of sale, has published a notice on

the day before the paper in which it appears purports to be issued, and has thereby given a longer notice than would be indicated by the date of the paper. At the time of the publication of the papers issued on Friday, the 24th, no default had occurred in the condition of the mortgage ; for the mortgagor was entitled to the whole of the business hours of that day in which to make payment. *Daly* v. *Proetz*, 20 Minn. 411. All the copies of the paper issued on the 24th, were, therefore, published before the power of sale became operative, and before the mortgagee was authorized to give the statutory notice of foreclosure. Gen. Stat., ch. 81, § 2. The attempted publication of the notice in the copies issued on the 24th was unauthorized and void, and the case stands as if the notice had been wholly omitted from those copies of the paper ; for a publication not authorized by law is in law no publication at all.

The remaining 130 copies of the issue bearing date January 25, being about one-sixth of the whole edition, were distributed by carrier among subscribers in Mankato on that day, after the power of sale had become operative, and the mortgagee was entitled to give notice of foreclosure and sale ; but the publication of the notice in those 130 copies was not a sufficient publication. Without undertaking to lay down a general rule, applicable to all cases where a notice has failed to appear in every copy of the regular issue of a newspaper, we think it entirely clear that a notice appearing in only one-sixth of the whole number of copies of an edition regularly printed and published, is not published in such newspaper within the meaning of the statute.

There was, therefore, no publication of any notice in the issue bearing date January 25, and the notice of sale was first published in the next following issue of the paper, that bearing date February 1. The notice published for the first time in that issue, and continued weekly, was clearly insufficient to authorize a sale on March 10, the day named therein as the time of sale. The statute, (Gen. Stat., ch. 81, § 5,) requires that the notice " shall be given by pub-

lishing the same for six successive weeks, at least once in each week, in a newspaper printed and published, etc.," and a notice published for the first time in the edition of February 1 could not possibly be published weekly for six successive weeks before March 10. And this defect in the proceedings was not cured by the postponement of the sale, on March 7, to March 17, although the time between the first publication and the sale was thereby enlarged to a period of more than six weeks. Neither the notice fixing March 10, nor that fixing March 17 as the day of sale, was published for six successive weeks, as required by statute.

At the time of the tender made by the plaintiffs on February 3, no valid proceedings in foreclosure had been instituted, and no costs or expenses had accrued which it was incumbent on the plaintiffs to pay. Their tender of the principal sum and interest then due upon the mortgage was therefore sufficient; and this tender having been kept good, and the amount thereof paid into court, the plaintiffs, at the time of bringing this action, had entitled themselves to the relief demanded in the complaint. The subsequent sale on March 17, and all further proceedings in the foreclosure, were wholly void, and created a cloud on plaintiffs' title, which should be removed. The conclusions drawn by the district court from the facts found, and the judgment dismissing the action, were erroneous. The judgment should therefore be reversed, and the case remanded to the district court, with directions to enter judgment for the plaintiffs, in accordance with the prayer of the supplemental complaint.