### ALEXANDER FINLAYSON *vs.* PETER·C. PETERSON.

Opinion filed June 10th, 1896.

**Foreclosure of Mortgage—Notice.**

> Under a statute requiring publication of notice of sale on foreclosure of mortgage by advertisement to be made "for six successive weeks at least once in each week," the first publication must be made at least 42 days before the day of sale, or the foreclosure proceedings will be void.

**Curative Act—Retroactive Effect.**

> It is not in the power of the legislature to cure by retroactive legislation the defect in foreclosure proceedings arising from the failure to publish the notice of sale for the full period of 42 days, and thus validate the void proceedings.

Appeal from District Court, Grand Forks County; *Templeton,* J.

Action by Alexander Finlayson against Peter C. Peterson. Judgment for defendant, and plaintiff appeals.

Reversed.

*Bangs & Fisk,* and *W. H. Standish,* for appellant.

*J. H. Bosard,* for respondent.

CORLISS, J. The ultimate problem to be solved in this case is the legality of certain foreclosure proceedings. The plaintiff is conceded to be the owner in fee simple of the premises in question, if such proceedings are void. On the other hand, it is also agreed that her title has been destroyed, and is fully vested in, the defendant, if those proceedings are valid. The only point urged against their legality is that the first notice of sale was not published at least 42 days before the day of sale. There were six different publications, and they were all exactly a week apart. But the day of sale was less than a week after the last publication. The question before us, then, is whether the statute, as it stood at the time of this foreclosure, required that full six weeks should intervene between the day of first publication and the day fixed for sale. The language of the statute is that the notice must be given "by publishing the same for six successive weeks at least once in each week." The word "for," in this statute, means

"throughout," or "during the continuance of." 3 Cent. Dict. p. 2314, definition 15 of word "for." It is obvious that a notice of sale has not been published during the continuance of a week, when the day of sale follows the day of publication at an interval of less than a week. Five weeks added to this fragment of a week will not constitute six weeks, unless a part of a week—the added fragment—is equal to a whole week. We agree with counsel for plaintiff that the statute contains two elements. The first requires a publication "for," or "during the continuance of," six weeks, and nothing short of a publication for forty-two days will satisfy this branch of the act. The other requires at least six publications, and that one of them shall be in each of the six weeks between the first publication and the day of sale. If the statute had declared that the notice should be published once a in each of six successive weeks, its meaning would have been different. But it does not so declare. Its explicit provision is that the notice shall be published for six successive weeks. We find our construction in harmony with the views of many courts, although some of the cases cited may perhaps be regarded as not directly in point, owing to a difference in the language of some of the statutes interpreted. *Bacon* v. *Kennedy*, (Mich.) 22 N. W. 824; *Wilson* v. *Insurance Co.*, 12 C. C. A. 505; 65 Fed. 38; *Boyd* v. *McFarlin*, 58 Ga. 208; *Pratt* v. *Tinkcom*, 21 Minn. 142; *Ogden* v. *Walker*, 59 Ind. 460; *Bunce* v. *Reed*, 16 Barb. 347, 350, 351; *Brod* v. *Heymann*, 3 Abb. Prac. (N. S.) 396; *Richardson* v. *Bates*, 23 How. Prac. 516; *Parsons* v. *Lanning*, 27 N. J. Eq. 70; *Early* v. *Doe*, 16 How. 610; *In re North Whitehall Tp.*, 47 Pa. St. 156; *Security Co.*, v. *Arbuckle*, (Ind. Sup.) 24 N. E. 329; *Smith* v. *Rowles*, 85 Ind. 265; *Market Nat. Bank* v. *Pacific Nat. Bank*, 89 N. Y. 398. See, also, *Olcott* v. *Robinson*, 20 Barb. 148, and dissenting opinion in *Olcott* v. *Robinson*, 21 N. Y. 150. The following cases are more or less in defendant's favor. *Olcott* v. *Robinson*, 21 N. Y. 150; *Wood* v. *Morehouse*, 45 N. Y. 368; *Sheldon* v. *Wright*, 7 Barb. 39; *De Peyster* v. *Michael*, 6 N. Y. 467; *Chamberlain* v. *Dempsey*, 13 Abb. Prac. 421; *Pearson* v. *Bradley*, 48 Ill. 250; *State* v. *Yellow*

*Jacket Silver Min. Co.,* 5 Nev. 415; *Dexter* v. *Shepard,* 117 Mass. 480.

But it is urged that an act passed March 8, 1889 (chapter 38, Laws 1889,) is decisive against the plaintiff. That act declares: "Whenever in any act or statute of the Territory of Dakota providing for the publishing of notices, the phrase successive weeks is used, the term weeks shall be construed to mean calendar weeks, and the publication upon any day in such weeks shall be sufficient publication for that week, provided, that at least five days shall intervene between such publications, and all publications heretofore or hereafter, made in accordance with the provisions of this act, shall be deemed legal and valid." There is nothing in this statute which in terms relates to the time that must elapse between the first publication and the day of sale. It might be urged with much force that that act was passed to settle a somewhat mooted question,—whether each successive publication must be made on the same day of the week,—and that for this purpose, and for this purpose only, it declares that a week means a calendar week. There has been a division of judicial opinion whether the notice should be published on the same day in each week, although the weight of authority is against the necessity of publishing the notice on the same day in each week. *Ronkendorf* v. *Taylor's Lessee,* 4 Pet. 349; *Wood* v. *Knapp,* (N. Y.) 2 N. E. 632; *Bachelor* v. *Bachelor,* 1 Mass. 256; *Raum* v. *Leach,* (Minn.) 54 N. W. 1058; *Loan Soc.* v. *Thompson,* 32 Cal. 347; *Steinle* v. *Bell,* 12 Abb. Prac. (N. S.) •171. Under these decisions, it perhaps would not be necessary to publish the notice in every calendar week, provided there was one insertion in each week commencing to calculate from the day of the first publication. If a notice should be published on Friday, the first week would not expire until the next Thursday, and the new week would not begin until the next Friday. Hence a second publication on the Wednesday of the week after might be in time. And yet in such a case there would be a gap of an entire calendar week during which no publication would be made. Now, this

statute prevents this. While it recognizes the soundness of the rule supported by the great majority of the cases, that the publication need not be made on the same day in each week, it yet limits that rule by declaring that, for the purpose of a publication once a week in each week, the word "week" means a calendar week. The result is that in cases governed by this act there must be one publication in each calendar week, no matter on what day the previous publication was made. There is also a further limitation that at least five days must intervene between every two publications. There is much force, however, in the argument that it was the purpose of the legislature to declare by this act that a publication on the last day of a calendar week should relate back to the beginning of that week, and be a publication for that week, as effectually as though the notice had been published on the first day thereof, instead of on the last. But, even assuming this to be the meaning of the statute, the defendant cannot avail himself of its provisions. It was passed four years after the foreclosure proceedings in question were consummated. If it be regarded as a legislative interpretation of the existing law, it can have no conclusive force. Construction of statutes is a judicial, and not a legislative, function. In cases of doubt a legislative construction is given some weight. But no court can allow the lawmaking power to alter by legislative enactment the meaning of a statute so as to affect vested rights. In 1885; when these foreclosure proceedings were had, the meaning of the statute under which the mortgagee foreclosed his mortgage was plain, and, as that statute required that the first publication should be made 42 days before the day fixed for sale, no subsequent law could affect the rights of the mortgagor to treat the foreclosure as void. The legislature cannot, by the device of construing a statute, alter its meaning so as to affect vested rights. But this statute is more than a mere declaration of the meaning of a prior law. It, it terms, provides that if publication has in the past been made in accordance with statute, as so interpreted, it shall be valid. In other words, the legislature has passed a curative law, and the question

is whether it is valid as such.  We think not.  While fully recognizing the power of the legislature to cure defects which it is unjust for one to take advantage of, we do not believe that this case falls within the rule.  There is no injustice in the mortgagor insisting that the full statutory notice be given.  The law threw about him the protection of full 42 days' notice, and to have insisted on it at any time before the enactment of this new act would have involved no injustice to the purchaser.  The latter would have been subrogated to the rights of the mortgagee, and the mortgagor, despite his successful assault upon the sale, must have paid the mortgage debt.  The mortgage would still have been a lien on the property.  So far. as the sale might have resulted in a surplus, so that subrogation of the purchaser to the rights of the mortgagee would not afford him full protection, the mortgagor would be obliged to refund to the purchaser such surplus, as a condition of annulling the sale.  The case is not like the case of a defective deed or a defective acknowledgment, the purchaser having paid full value for the property.  Nor is it analogous to the case of a contract which a party ought in conscience to perform, although holding in his grasp against it some technical defense, as that she was a married woman, or that the agreement was not in writing.  In these cases the court answers the argument that the legislature cannot disturb vested rights by the conclusive reply that no one has a vested right to be unjust, or to do a moral wrong.  Mr. Cooley states this as the foundation of the doctrine that defects may be cured by retroactive legislation.  He says:  "As the point is put by Chief Justice Parker, of Massachusetts, a party cannot have a vested right to do wrong; or, as stated by the Supreme Court of New Jersey: 'Laws curing defects which would otherwise operate to frustrate what must be proved to be the desire of the party affected cannot be considered as taking away a vested right.  Courts do not regard rights as vested, contrary to the justice and equity of the case.'" Const. Lim. p. 378, marginal paging, and 460, top paging, of second edition. We have carefully examined the whole law on this subject of

curative legislation, and we have been unable to find an adjudication which has taken a position so extreme as we would be compelled to take, should we allow this statute to have a retroactive effect, and thus validate an absolutely void sale; it not being abhorrent to natural justice for the owner of the property, under the circumstances of this case, to insist upon his strict legal rights. We do not lay so much stress on the fact that the foreclosure sale was absolutely void, for we think that even when a proceeding of any kind is void, with the exception of a judicial proceeding void for want of jurisdiction, it is nevertheless within the power of the legislature to validate such proceeding by retroactive legislation, if it would be grossly unjust for the person against whom the healing law is directed to insist upon his purely technical rights, destitute of all equity. But the case should be a clear one. Nothing short of this should prompt a court to sustain such a law. All jurists agree that this power, while highly beneficial when kept within proper limits, is liable to great abuse; and, while some of the cases have given it very wide scope, yet the unmistakable trend both of recent judicial decisions and of recent constitutional changes is in the direction of strictly limiting this power.

We have assumed so far, in the course of this opinion, that the failure to comply with the statute requiring publication for six full weeks rendered void the sale. On this point there has been no contention between counsel, and both authority and principle speak only one voice on this branch of the case. The foreclosure was void. *Pratt* v. *Tinkcom*, 21 Minn. 142; *Parsons* v. *Lanning*, 27 N. J. Eq. 70; Wade, Notice, § 1105; *Bacon* v. *Kennedy*, (Mich.) 22 N. W. 824.

Whether the plaintiff can maintain ejectment against the defendant, or must resort to an action to redeem the property, on the theory that the defendant is a mortgagee in possession, we are not called upon to decide on this appeal. The questions before us arise upon demurrer to the complaint. The facts set forth in the complaint entitle the plaintiff to some kind of relief,

and the general prayer for such relief as may be just and equitable will warrant the court in granting plaintiff, such relief as the facts upon the trial will show he is entitled to. The complaint seems, however, to be framed on the theory the plaintiff has a right to maintain ejectment; and if the fact is, as set forth in that pleading that defendant forcibly ejected plaintiff from the land, it may be that ejectment will lie. On that point we express no opinion. The order and judgment of the District Court are reversed, and that court will enter an order overruling the demurrer to the complaint on such terms as that court may prescribe. All concur.