## UNITED STATES MORTGAGE CO. *v.* MARQUAM.

[69 Pac. 37, 41.]

CONCLUSIVENESS OF FINDINGS WHERE EVIDENCE IS NOT BROUGHT UP.

1. A finding of the trial court that a trustee, empowered by a trust deed executed by a mortgagor to take possession of the mortgaged property, and to collect the rents and profits, and apply them to the payment of interest and taxes, was not the agent of the mortgagee, is conclusive on appeal, where the evidence is not brought up.

POSTPONEMENT OR FORFEITURE OF MORTGAGE LIEN.

2. A mortgagor on the date of the mortgage deeded the property covered thereby, together with certain other property, to a trustee ; the latter to take possession and collect the rents and profits, and apply them to the payment of interest and taxes, etc. The trustee was further empowered to lease the property, and to extend the term beyond the maturity of the mortgage, not exceeding one year. The court found that the trustee made two leases extending beyond the maturity of the mortgage, neither of which was at the instance of the mortgagee. *Held* insufficient to postpone or forfeit the mortgage lien.

USURY—STATUTORY CONSTRUCTION.

3. Under Section 3593 of Hill's Ann. Laws, providing that contracts made in this state on which the rate of interest is 8 per cent or less, whereby one party shall agree to pay the taxes on the debt, credit or mortgage, shall not be usurious, parties may lawfully contract to pay the taxes, and any or all other charges or rates that may be mutually agreed upon, provided all such charges and the interest together, exclusive of the taxes, do not exceed 8 per cent.

PLEADING—FACTS—CONCLUSIONS.

4. A mortgagor on the date of the mortgage deeded the property covered thereby, together with certain other property, to a trustee ; the latter to take possession and collect the rents and profits, and apply them to the payment of interest and taxes, etc. The trustee was further empowered to lease the property, and to extend the term beyond the maturity of the mortgage, not exceeding one year. *Held,* that an answer in a suit to foreclose the mortgage, showing that some five leases were executed beyond the time designated, but not showing what rents were stipulated for, or how they were injurious to the mortgagor's reversionary estate, but merely averring that the leases were apparent incumbrances and clouds on the mortgagor's title, was insufficient to show an estoppel, or to require a forfeiture of the mortgage lien.

FRAUDULENT MORTGAGE—VALIDITY OF AS BETWEEN THE PARTIES.

5. An objection that a mortgage and deed of trust executed by a party is a fraud on his creditors is available only to the latter, and cannot be made by the party himself, it appearing that the instruments themselves had a good consideration.

TERMINATION OF MORTGAGE TRUST—RIGHTS OF TRUSTEE.

6. A mortgagor on the date of the mortgage deeded the property covered thereby to a trustee, the latter to take possession and collect the rents and profits, and apply them to interest, taxes, etc. The deed obligated the trustee to make certain advances for the benefit of the mortgagor. The life of the

trust was made dependent on the existence of the mortgage, and the trustee was given a lien for advances made. *Held,* that foreclosure of the mortgage terminated the trust, and, where made a party defendant to the foreclosure suit, the trustee was entitled to file a cross complaint seeking to have its own lien foreclosed.

CONSTRUCTION OF MORTGAGE TRUST AGREEMENT.

7. The trust contract and agreement executed between the trustee and the defendants herein did not require the trustee to make advancements to pay interest on the mortgage loan.

FORECLOSURE OF LIEN—RELIEF ON CROSS SUIT.

8. A cross complaint brought against a mortgagor by one of the parties defendant to a suit to foreclose the mortgage may extend to all the property covered by the cross complainant's lien, and need not be confined to the property covered by the original mortgage, for such an answer is really a suit to foreclose such lien, and the party should not be obliged to assert his rights by piecemeal.

EXECUTION SALE—OBJECTION—NOT MADE BEFORE TRIAL COURT.

9. An objection that there was not sufficient proof of the publication of a notice of sale on execution could not be taken for the first time on appeal from a decree confirming the sale, but should have been raised in the trial court.

EXECUTION SALE—EVIDENCE OF BEING A SUNDAY PAPER.

10. A paper denominated the "Sunday Welcome," issued on Saturday of each week between 1 and 4 o'clock in the afternoon, and delivered to subscribers on that day, notwithstanding its name, is not a Sunday publication in a legal sense.

TERM "NEWSPAPER" CONSIDERED.

11. A weekly paper having a circulation through the mails, by delivery and by news stands of from 1,000 to 1,100 copies and not confined to any particular class or sect of individuals, sensational in its tone, containing the sporting news, some news of general interest, and many advertisements of a business nature, is a newspaper within the purview of Hill's Ann. Laws § 291, requiring notice of an execution sale to be published in some "newspaper."

EXECUTION SALE—SUFFICIENCY OF SHERIFF'S RETURN.

12. A sheriff's return on an execution reciting, "I further certify that I advertised said sale also by posting copies of the said notice in three public places in the county of M. and State of Oregon," etc., was sufficient, and an objection that it did not set forth facts showing that the places where the notices were posted were public places was untenable.

From Multnomah: JOHN B. CLELAND, Judge.

This is a suit by the United States Mortgage & Trust Co. to foreclose a mortgage given by P. A. Marquam and wife, and the defendant Title Guarantee & Trust Co. filed a cross bill asking the foreclosure of a trust deed given as security for sundry loans. There was a decree in favor of the plaintiff and

the cross-plaintiff, from which the defendants Marquam appeal. The mortgaged property having been sold, objections were filed to the confirmation of the sale, and from an order overruling them the defendants Marquam again appeal. The facts are fully stated in the opinions, which are both written by Mr. Justice WOLVERTON, and are reported together.

· On November 13, 1894, P. A. Marquam and Emma Marquam, his wife, executed and delivered to plaintiff, the United States Mortgage & Trust Co. a mortgage on certain real property to secure the payment of $300,000 in five years from date, with interest at 7 per cent per annum, payable quarterly. There is a stipulation in the mortgage that, in case of default in payment of interest or in complying with the conditions thereof, and as often as there was a failure in either respect, the mortgagee might at any time declare the whole of the principal due, and foreclose at once. The quarterly interest due in February, May, and August, 1899, being defaulted, shortly prior to November 13th following, the date upon which the principal sum was made payable, the mortgage company commenced this suit to foreclose. The Title Guarantee & Trust Co. was made a party defendant, with numerous others having or claiming interests in the premises mortgaged. On the date of the execution of the mortgage Marquam and wife and the Title Company entered into a trust agreement with relation to the property mortgaged, together with four lots in block 120, in the City of Portland, all of which was conveyed to the Title Company, which recites, in brief that *whereas,* in consideration of the premises and of the agreements on the part of Marquam and wife, hereinafter contained and herefore understood between the parties hereto, said Title Company has rendered certain services, and will advance certain sums of money, and has secured for Marquam and wife a loan in the sum of $300,000 from the Mortgage Company, to secure the payment of which they have executed their mortgage on certain real property (describing it) : Now, therefore, it is mutually agreed that Marquam and wife will pay the Title Com-

pany the sum of $4,500 for exchange, title insurance, abstract of title, and brokerage in the matter of said loan, and during the life of said trust will pay said Title Company for its services rendered in the financial management and oversight of said property $1,000 per annum and certain specified commissions; and it is further agreed that during the life of said trust the Title Company shall have the entire control and management of said property for the use and purposes hereinafter set out; and *whereas,* under a certain preliminary agreement entered into between Marquam and wife and the Title Company and others on the 30th of August, 1894, the Title Company agreed to advance for Marquam, when said loan of $300,000 should be consummated, the funds in excess of said loan necessary to discharge certain specified indebtedness and expenses; and *whereas,,* it may be necessary in the matter of said trust for said Title Company to advance money from time to time to Marquam and wife,—it is further mutually agreed that when any of such advances are made they shall execute their promissory note for each sum advanced, to become due and payable on or before two years, unless they would mature at a date subsequent to the maturity of the mortgage, in which event they should be so drawn as to fall due contemporaneously with said mortgage; that the lots in block 120 should be held in trust as collateral security, and the remainder of the property in trust to carry out the purposes of this agreement, and to collect the rents and profits arising therefrom for the following purposes: (1) To pay operating expenses, repairs, for services in collecting rents, interest on loan, taxes, and public charges; (2) to pay all amounts advanced and to be advanced to Marquam and wife; (3) to pay certain other indebtedness specified; (4) to pay the Title Company for services in executing the trust; and (5) after said loan shall be discharged, and all requirements of the trust satisfied, to reconvey the property.

On February 13, 1895, the parties entered into a supplemental agreement, whereby the original is so construed as to authorize the Title Company to execute leases to any and all

of said property, and, where necessary to secure desirable tenants, to extend the time beyond the life of the trust, not exceeding one year, having due regard for Marquam's interest after the life of said trust as to the amount of the rentals, and not to collect beyond the life of the trust in advance. Still another agreement was entered into with reference to the trust property, to which the Northern Counties Investment Co. became a party, but it is not important within the range of the present controversy. On December 1, 1899, Marquam and wife filed an answer in abatement denying the mortgagee's authority to declare the whole of the principal sum due for the nonpayment of interest charges, and setting up that the Title Company was the agent of the plaintiff, and that as a part consideration for said loan, and as an essential condition thereof, the agreement was entered into between Marquam and wife and the Title Company as hereinafter set forth; that said Title Company has collected sufficient funds with which to discharge the unpaid interest notes, over and above the expenses and cost of management of the property, but has misapplied and misappropriated them in violation of said trust, and that by neglect of duty it has failed to obtain and collect a large sum of rentals it could and should have collected by the exercise of proper diligence and oversight, and that an accounting is necessary to a proper determination of the matter. And for a further defense it is alleged that the Title Company, while acting as such trustee for the Mortgage Company, and at its instance and with its approval, but without consent of Marquam and wife, made divers leases of divers parcels of real property extending beyond the 13th of November, 1899,—all of which were in violation of the conditions of the trust; that such leases were incumbrances and clouds upon the title to said realty; and that any sale under foreclosure during the period in which any of said leases have to run will cause Marquam and wife irreparable loss and injury, and pray for a dismissal of the suit.

A trial being had under issues tendered by a denial of all the material allegations of the answer, it was found, among

other things, that the trust agreement was not a part of the contract with the Mortgage Company for the loan of $300,000, and. that the Mortgage Company was not a party thereto; that the Title Company was not the agent of the Mortgage Company in any sense in so far as it related to the trust agreement, nor has it collected rents and profits sufficient with which to meet said interest payments, over and above costs and expense of operating and managing the property; that it made the leases complained of at its own instance, without the approval of the defendants Marquam and wife, and that the Mortgage Company as mortgagee did not consent to the making of more than two of them; and thereupon dismissed the plea.

Later, Marquam and wife answered the complaint, again alleging that the trust agreement was entered into as a part consideration for the loan made by the Mortgage Company, and that its execution was an essential condition precedent to the making of said loan; that for a long time prior to the date of said mortgage and trust agreement the Title Company had been and was the agent for the Mortgage Company for making loans and the investment of its funds in and about the City of Portland and collecting and remitting interest under an agreement that the Title Company should charge and collect from the parties to whom money had been loaned by the Mortgage Company a reasonable compensation for its services in making such loans, and collecting and making remittances in the form of brokerage, and thereby wholly relieve the Mortgage Company from such expense; that the loan to Marquam and wife was made in pursuance of such agreement, and that said trust agreement was entered into for the benefit of said Mortgage Company, to enable it to collect and have remitted its interest and principal sum, whereby the brokerage and commissions for such services were to be paid by Marquam and wife; that the said Title Company, while in possession of the property under said trust, has received and retained to its own use commissions amounting to the sum of $3,000, and claims brokerage and salary in the further sum of $9,000,

adding which to the stipulated interest of 7 per cent would make the rate unlawful and usurious; and that the loan is therefore void, and the principal sum should be forfeited to the school fund. For a second defense it is alleged, as in the plea in abatement, that leases have been made extending beyond the date of the maturity of the mortgage at the instance and by and with the consent of the mortgagee to the end that it might realize more than it was entitled to from the rents, issues, and profits of the property, and without the consent of Marquam and wife, whereby their title had been clouded and irreparably damaged, and the lien of plaintiff's mortgage waived, and it is estopped from foreclosing the same. For a third defense it is alleged that the property conveyed in trust to the Title Company was substantially all the property that Marquam and wife owned at the time; that Marquam was then indebted to divers persons other than the plaintiff and the Title Company in the sum of more than $70,000, and the conveyances operated to harass and hinder them in the collection of their demands, and that such was the intent and purpose of the trust agreement and the Mortgage Company in instigating it; and that such mortgage and trust agreement was, in effect, an assignment for the benefit of a part, only, of Marquam's creditors, and was therefore illegal and void. For a counterclaim it is alleged that the Title Company, acting as the agent of the Mortgage Company, has collected large sums of money, which it has wrongfully and negligently failed to apply towards the payment of said interest notes, and has converted the same to its own use in the aggregate of over $50,000; and that an accounting is necessary for the ascertainment of the true amount thereof, and a dismissal of the suit is demanded.

The answer was held to be insufficient in every particular tested by motion and demurrer directed to specific parts and to the whole thereof. On November 6, 1899, the Title Company filed a cross complaint setting up its trust agreement with Marquam and wife, the subsequent modification, and its operations and doings thereunder; that it has made

large advances to Marquam and wife from time to time, and taken their notes therefor; and has made further advances for which notes have not been given, and has rendered to them from time to time statements of account, which were approved and have been settled, and that at the date of the filing of said cross complaint there was due and owing from Marquam and wife to the Title Company a large sum of money amounting to $40,897.81, with accrued interest.

Marquam and wife answered again, setting up the trust agreement, and alleging that the requirements of the trust have not been fully satisfied; that it has not yet terminated; that by the terms thereof the Title Company was obligated to make further advances and to perform further services, and that the trust must yet continue for an indefinite period. The second defense is akin to this, and avers that the Title Company is now in possession of the property, assuming and pretending to be engaged in the performance of its duties under the trust. By the third it is alleged that the Title Company has been negligent in its duty in leasing the property, to the damage of Marquam and wife in the sum of $90,000; and a fourth defense is of like tenor, alleging damages in the sum of $36,000, arising from the same cause. A fifth defense alleges that the Title Company failed to pay the taxes or to make advances to Marquam and wife as it had agreed, whereby they are damaged in the further sum of $50,000, and it was sought to have the cross complaint dismissed, or an accounting had before the trust should be wound up. The first and second defenses were held insufficient upon demurrer, and other parts of the answer were stricken out on motion. After trial upon the merits under the remaining issues between Marquam and wife and the Title Company, the court found, among other findings of fact, that the Title Company, upon the execution of the first agreement with the Marquams entered into possession of the trust property, and has since controlled and managed it; that from time to time and frequently during the supervision thereof, and as late as January 13, 1899, the Title Company rendered them statements of

account, whereby it fully disclosed and truly stated the matters of account between them arising from said trust; that no objections were ever made thereto prior to the month of July, 1899, and that on the 13th day of May, 1900, there was then due the Title Company $28,667, exclusive of attorney's fees; that the Title Company has been prudent, careful, and diligent in renting the various properties, and in the conduct and management of said trust, and has been guilty of none of the acts of negligence, carelessness, or maleficience specified in the answer of defendants. By the final decree it was considered that the trust agreement had been fully carried out and completed; that it was, in effect, a mortgage, and constituted the company a mortgagee in possession, and a foreclosure decreed; and the assets to arise from a sale under execution were marshaled with reference to the relative equities of the plaintiff and the several parties defendants. Marquam and wife appeal.                                          AFFIRMED.

For appellants there was a brief over the names of *U. S. Grant Marquam,* and *Watson & Beekman,* with an oral argument by *Mr. Edw. B. Watson,* and *Mr. Marquam.*

For Title Guarantee & Trust Co., and J. Thorburn Ross, Trustee, there was a brief over the name of *Snow & McCamant,* with an oral argument by *Mr. Wallace McCamant.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1. We will consider the numerous questions presented as they appear to arise upon the record. It is first urged that the Title Company was the agent of the mortgagee under the trust agreement for the collection of rents and profits and their application to the payment of taxes and interest, and that, such agent having collected sufficient of the rents to discharge the interest notes, the suit was prematurely instituted. These are matters of fact, and were disposed of under the plea in abatement, and, as the evidence has not been brought up, the findings of the trial court are conclusive.

2. In this connection there was another question presented relating to the leasing of divers parcels of realty to continue beyond the maturity of the mortgage, whereby it is claimed that the lien of the plaintiff acquired by virtue of the mortgage has been waived and forfeited, or at least postponed until all damages arising from said unauthorized leasing are made good. The court found, however, that the Title Company had made two leases, only, extending beyond the maturity of said mortgage, neither of which was at the instance of the Mortgage Company. This was not effective to postpone or forfeit the plaintiff's mortgage lien. Plaintiff's action in relation thereto, as so found, cannot be construed to extend beyond the bare assent of a mortgagee to the leasing. It was not an affirmative impairment upon its part of the value of the mortgaged property, and such was not its purpose by any inference that can be drawn from the transaction.

3. The next question presented by appellants is that the loan was usurious. This contention is necessarily based upon the hypothesis that the Title Company was the agent of the lender in the control and management of the trust property and the collection of the rents, issues, and profits, for which services it charged and received a commission from Marquam and wife. Such relation, however, was found not to exist under the plea in abatement; but, even if it did, the contract is not shown to usurious. The statute (Hill's Ann. Laws, § 3593,) provides that all contracts made or entered into in this state on which the rate of interest is 8 per cent or under, whereby one party shall agree to pay the taxes on the debt, credit, or mortgage, shall not be deemed or taken to be usurious; and the argument is that any contract to pay anything beyond the rate agreed upon, however small, with taxes, although such rate is under 8 per cent, is usurious; that is to say, as applied to the case at bar, the parties having agreed upon 7 per cent, with taxes added, any further charge for the use of the money in addition to the agreed rate would render the contract invalid, whether it was made thereby to exceed 8 per cent or not. This is neither the spirit nor the intend-

ment of the statute.   Parties are permitted to contract for interest as high as 8 per cent, with taxes added; and if all rates, charges, or other compensation agreed upon for the use of the money do not exceed the rate, aside from the taxes on the debt or obligation, the transaction does not fall within the interdiction of the law, and is, therefore, not usurious.   Now, it is alleged that the Mortgage Company charged commissions for collecting rents, etc., during a period of five years, amounting to $3,000, and claim brokerage and salary, covering the same period, of $9,000, aggregating $12,000, or $2,400 per annum. At 8 per cent, the interest charge would be $24,000 per annum on the amount of the loan, but the rate agreed upon was 7 per cent, or $21,000, per annum, thus leaving a margin of $3,000, which exceeds the alleged additional charges and commissions; so that, conceding the allegations of Marquam and wife to be true,—as we must where the pleadings are tested by demurrer,—usury has not been established.

4. The second separate defense proceeds upon the idea that the plaintiff has forfeited its mortgage lien, and is estopped to insist upon its foreclosure, by reason of having been instrumental in the execution of the unauthorized leases of parcels of realty.   It appears by the answer that some five leases were executed extending beyond the time designated in the supplemental trust agreement, which permitted the trustee to execute them for one year beyond the maturity of such mortgage. It is not shown, however, what rents were stipulated for, or in what respect they were injurious to Marquam's reversionary estate, and the statement that the leases are apparent incumbrances and clouds upon Marquam's title is a mere conclusion of law; so that the facts pleaded are wholly insufficient to create an estoppel, much less to require a forfeiture of the Mortgage Company's lien.

5. It is next urged that by the mortgage and deed of trust Marquam and wife transferred substantially all their property to the mortgage and title companies, which operated as a hindrance and fraud upon divers other of their creditors, and was

so intended by the parties concerned, and that the mortgage is void on that account. Giving to the allegations of the answer their strongest interpretation in favor of the pleader, the transaction, being founded upon a consideration, was voidable only at the instance of the creditors, but valid as between the parties to the contract, and enforceable in equity: *Bradtfeldt v. Cooke*, 27 Or. 194 (40 Pac. 1, 50 Am. St. Rep. 701). The plea is therefore unavailable, as held by the trial court.

The last defense interposed to the complaint is that the Title Company, as plaintiff's agent, collected the rents and profits of the property deeded in trust, which it failed and neglected to apply in discharge of the interest notes, and converted the same to its own use, and that an accounting is necessary to a determination of the amount thus collected. If it be conceded that the answer is technically sufficient, the issue was tried out between Marquam and wife and the Title Company, and after a full hearing it was found that the company had conducted and managed said trust carefully and honestly, and had punctiliously accounted for all sums collected and received by virtue thereof. This, in effect, disposed of all the matters in controversy on the merits, and the court of equity would not be warranted in reversing the decree of the trial court upon a purely technical objection, which could not result in any different adjudication in the end.

6. It is next urged that the Title Company could have no relief by cross complaint, because the trust agreement had not terminated, either by performance or by rescission, and that no final accounting could be had, nor a lien decreed against the property in favor of the trustee, until one or the other of these conditions existed. The trust agreement, as shown by its terms and conditions, was entered into to enable the Title Company to manage the property, and from the rents and profits arising therefrom to discharge the expenses of management and interest charges on the mortgage so far as they were sufficient, and, if there was a surplus, to apply it *pro rata* to certain specified indebtedness of Marquam and wife, and after these to apply it on the principal sum for which the

mortgage was given.  The life of the trust was made dependent upon the existence of the mortgage, and the Title Company was given a lien for advances made in pursuance of the stipulations contained in the trust agreement, so that a foreclosure of the mortgage would necessarily put an end to the trust relations.  Regardless of any stipulations of the parties, such foreclosure would deprive the trustee of the subject of the trust to operate upon, and the agreement would henceforth become inoperative.  It was, therefore, incumbent upon the Title Company, when made a party, to answer, setting up its duties and obligations in the premises, as well as its rights and interest in the property; and having a lien, whether it comes by a trust agreement, technically speaking, or an instrument more properly denominated a mortgage, it has as good a right to have it foreclosed as if it were plaintiff in the suit: Hill's Ann. Laws, § 416.

7. The agreement is not susceptible of the construction that the Title Company undertook to advance the money necessary to meet the interest payments upon the mortgage loan as they came due.  There is a recital in the agreement that it may become necessary in the matter of the trust for the Title Company to advance moneys to Marquam and wife, but we look in vain throughout its terms and conditions for any stipulation to advance the interest on the loan as it became due, or to pay it otherwise than out of the funds collected and realized from the rents and profits.  Other advances are specifically mentioned, and the agreement by the most liberal construction, cannot be extended so as to include interest payments.  So the Title Company was not remiss in failing to make advances of interest to prevent the mortgagee from declaring the mortgage due before the date of its maturity.

8. It is no answer to the cross complaint of the Title Company to say that it is now engaged in the performance of its obligations under the instrument, because the institution of the suit to foreclose the mortgage necessarily required the winding up of the trust affairs, and hence it is perfectly legitimate to insist upon an accounting with reference thereto at

the present time. This disposes also of the second defense to the cross complaint. In this connection it is contended that the Title Company cannot foreclose as to the lots in block 120, as they are not covered by plaintiff's mortgage, and not the subject of its foreclosure proceedings. These lots were hypothecated, however, by the same instrument, to secure the same obligations to the Title Company, as the property covered by plaintiff's mortgage, and is as much subject to a foreclosure at the suit of the Title Company as the other premises. A cross complaint of a defendant having a lien is, for all purposes, a complaint against the holder of the equity of redemption (*Ladd* v. *Mason*, 10 Or. 317), and may also extend to all property covered by his lien, and thus he may have full relief at once, and not be driven to a foreclosure by piecemeal: *Phillips* v. *Anthony*, 47 S. C. 460 (25 S. E. 294); and *Stockton Sav. & Loan Soc.* v. *Harrold*, 127 Cal. 612 (60 Pac. 165).

The matter of damages appears, as we have seen, to have been disposed of upon the merits, notwithstanding certain alleged items may have been stricken out of the motion, and concludes further controversy as to them. These considerations affirm the decree of the court below, and it is so ordered.

AFFIRMED.

Decided 3 June, 1902.

ON SUPPLEMENTAL APPEAL FROM AN ORDER.

CONFIRMING A SALE.

*Messrs. Edward B. Watson* and *U. S. Grant Marquam,* for the objections.

*Mr. Wallace McCamant, contra.*

MR. JUSTICE WOLVERTON delivered the opinion.

9. This is an appeal from a decree confirming the sale of real property under execution. The first objection insisted upon is that there is not sufficient proof of the publication of the notice of sale, there being no affidavit of the printer of the

newspaper, his foreman, or principal clerk annexed to the sheriff's return showing the publication.    But this question was not raised in the trial court, and hence no error is assignable respecting it.    It is not a question like want of jurisdiction, or insufficiency of facts to constitute a cause of suit, that may be raised at any stage of the proceeding, but must be interposed at the proper time in the trial court; otherwise it cannot be urged in this court for the first time.    Such is the rule in actions at law (*State* v. *Anderson,* 10 Or. 448; *State* v. *Abrams,* 11 Or. 169, 8 Pac. 327), and there exists no good or sufficient reason why it should not prevail in equity.

10. It is next contended that the Sunday Welcome is not a newspaper, within the purview and meaning of Hill's Ann. Laws, § 291, because it is a Sunday paper, and not of general circulation.    The paper, as shown by the evidence, is issued on Saturday of each week, from 1 to 4 o'clock in the afternoon, bears date and is mailed and delivered to subscribers on that day, so that, whatever may be its name, it is clear that its issuance and circulation takes place on a secular day, and not on Sunday: 16 Am. & Eng. Ency. Law (1 ed.), 491; *Pratt* v. *Tinkcom,* 21 Minn. 142.    The Sunday Welcome is therefore not a Sunday publication in a legal sense, and the objection to it on that ground is not well taken.

11. The statute requires that a copy of the notice be published in a newspaper of the county, and it is assumed that it should be of general circulation.    The circulation of the Sunday Welcome through the mails, by delivery, and by news stands is from 1,000 to 1,100 copies, and it is not confined to any particular class or sect of individuals.    It is sensational in tone, contains the sporting and some current news of general interest, many advertisements of a business nature, and has been made the medium for legal publications for more than two years, beyond which the evidence does not extend. Such a publication would seem to fall within the legal acceptation of a newspaper.    Mr. Justice Mitchell, in *Hull* v. *King,* 38 Minn. 349, 350 (37 N. W. 792), in attempting to give a very general definition of a newspaper, says that according

to the business world, and in ordinary understanding, it is "a publication, usually in sheet form, intended for general circulation, and published regularly at short intervals, containing intelligence of current events and news of general interest." A publication may be devoted to the dissemination of knowledge or intelligence of a particular kind, or to the advocacy of particular views; but if it also contains information of current events, and news of importance and interest to the general reading public, it is nevertheless a newspaper within the meaning of the term. So it is that publications devoted mainly to the promulgation of religious news and doctrines of a religious sect, or essentially to the dissemination of legal learning and literature, when devoting a portion of their columns to news matters of current and public interest, have been held to come within the designation: *Hull* v. *King*, 38 Minn. 349, 350 (37 N. W. 792); *Kellogg* v. *Carrico*, 47 Mo. 157; *Keer* v. *Hitt*, 75 Ill. 51; *Railton* v. *Lauder*, 126 Ill. 219 (18 N. E. 555) *Pentzel* v. *Squire*, 161 Ill. 346 (43 N. E. 1064, 52 Am. St. Rep. 373); *Lynch* v. *Judge of Probate*, 101 Mich. 171 (45 Am. St. Rep. 404, 59 N. W. 409); *Lynn* v. *Allen*, 145 Ind. 584 (44 N. E. 646, 33 L. R. A. 779, 57 Am. St. Rep. 223). *Kerr* v. *Hitt* is fairly illustrative of the subject-matter, where it was held that the Chicago Legal News, published once a week, devoted principally to the dissemination of legal intelligence, but making reference to passing events and containing advertisements, brief notices of legislative bodies, and personal and political items of interest to the general reading as well as the legal profession, was a newspaper of the character contemplated by statute. We are therefore of the opinion that the Sunday Welcome falls within the category of a newspaper. It was further urged that the immoral tone of the paper inhibits its dissemination among respectable people; but its publication is not prohibited by law, nor is it denied access to the mails, so that its issuance and promulgation is at least lawful; and, so long as it publishes current news items of general public interest, we must assume that, with

the circulation it has, it is read more or less by the general public.

12. The return of the sheriff upon the execution, as it pertains to the posting of the notice of sale, is as follows: "I further certify that I advertised said sale also by posting copies of the said notice in three public places in the County of Multnomah and State of Oregon for four weeks immediately prior to said sale, said notices so posted being identical in form with the notices so published;" and it is objected that such proof of posting is insufficient, in that it does not set forth facts showing that the places where the notice was posted are public places. Like returns of sales under execution, however, have received the sanction of this court (*Bank of British Columbia* v. *Page,* 7 Or. 454; *German Loan Soc.* v. *Kern,* 38 Or. 232, 62 Pac. 788, 63 Pac. 1052); so that the sufficiency and validity of the present one is established by precedent.                                          AFFIRMED.

Decided 3 June, 1902.