Matthias, J.
The first question presented by the demurrer is whether failure to record the certificate of the county auditor made pursuant to Section 5660, General Code, renders the contract for the improvement void. The portion of Section 5660, General Code, essential to the consideration of this question is as follows:
“The commissioners of a county * * * shall not enter into any contract, agreement or obligation involving the expenditure of money, or pass any resolution or order for the appropriation or expenditure of money, unless the auditor # * '* first certifies that the money required * * * is in the treasury to the credit of the fund. * * * Such certificate shall be filed and forthwith recorded.”
It is also provided by Section 5661, General Code, as follows:
“All contracts, agreements or obligations, and orders or resolutions entered into or passed contrary to the provisions of the next preceding section, shall be void,” etc.
The purpose in requiring such certificate to be made and in prohibiting public officials entering into any such contracts unless such certificate is first made is clearly to prevent fraud and the reckless expenditure of public funds, but particularly to preclude the creation of any valid obligation against the county above or beyond the fund previously provided and at hand for such purpose. Such provi *414 sions have frequently been held mandatory, and compliance therewith an absolutely essential prerequisite. In the absence of such compliance no valid contract can be entered into. By the very terms of Section 5660, General Code, the making of such certificate is a condition precedent to the power or authority to enter into such contract, but the recording thereof is not made such prerequisite or condition precedent.
It is conceded in this case that such certificate was made, but it was not recorded until subsequent to the execution of such contract, and in fact subsequent to its completion. It is contended that the recording forthwith of such certificate being one of the requirements of Section 5660, General Code, the entering into a contract prior thereto is, in the language of Section 5661, General Code, “contrary to the provisions of the next preceding section” and void.
It is to be observed that under the mandatory provisions of Section 5660, General Code, such contract may not be entered into unless the auditor first certifies, etc., and the irresistible conclusion is that, if and when the auditor so cértifies, the contract may be immediately made, and in such respect would be valid, and that the provision as to recording the certificate, a mere clerical act, is only directory. The making of the certificate is the essential thing to meet and carry out the protective purposes of the statute; the recording of the certificate being merely for the purpose of preservation and future reference. Had it been intended by the Legislature to also make the recording of such certificate a condition precedent to entering into a contract, it certain *415 ly would have provided that no contract be entered into unless the auditor first certify, etc., and such certificate be recorded. The only condition precedent to the making of the contract in respect to such certificate was fully complied with, and the purpose of such requirement was completely served, although the certificate was not recorded prior to the execution of the contract. It was on file in the office of the state highway commissioner, where bids were to be received and the contract made.
It is further contended that no valid contract was entered into by the parties for the reason that the advertisement for bids did not comply with the requirement of Section 1206, General Code. It is disclosed by the amended petition that the advertisement in question, which gave notice that bids would be received up to June 14,1917, was published in each of two weekly newspapers of the county on June 6 and June 13. Was this a compliance with the requirement of the section that “the state highway commissioner shall advertise for bids for two consecutive weeks?” In our opinion the word “for” has some significance as used in this statute, and applying the dictionary meaning thereof, which seems to us clearly indicated by the context as that most likely meeting the intent of the Legislature, such advertisement is required “during the continuance of” or “throughout” the period of two weeks. (Finlayson v. Peterson, 5 N. D., 587, 67 N. W., 953, 33 L. R. A., 532, 57 Am. St. Rep., 584, and cases there cited.) In the instant case it was only eight days from the first publication until the date fixed for the filing of bids. The purpose to be served by such publication of notice is an element to be considered in determin *416 ing the meaning of the language employed. That purpose clearly is to give notice to all who may be concerned therein, and particularly to those who may desire to file bids. The second advertisement would aid little in effectuating that purpose if bids may be received the morning following the publication, and that purpose could be thwarted if “for two consecutive weeks” be held to mean the same as “in two consecutive weeks.” As a practical proposition, bids may as well be received on the day of the second publication as on the following morning. Concededly the advertisement may be made in either a daily or weekly newspaper. If the argument of counsel for the state is sound, then the insertion of the advertisement in a daily newspaper on Saturday and again on Monday would comply with the statute, for that would be a publication in each of two consecutive calendar weeks. The evident purpose of our statute was to require not only two publications, but two weeks notice, and it was contemplated that a period of two weeks would be allowed for filing bids from the date of the first publication. If the requirement of the statute were that notice be published for one week, it surely would not be claimed that bids might be received the very day following the publication of the notice. That would scarcely be any notice at all, and could serve no beneficial purpose. Our conclusion is that the advertisement in question here did not comply with the mandatory requirements of the statute. This statute has not been construed by this court, although involved in the case of Cowen, State Highway Commissioner, v. State, ex rel. Donovan, a Taxpayer, 101 Ohio St., 387, 129 N. E., 719, where the judgment of the Court of Ap *417 peals was affirmed. The opinion in that case, however, assumes, rather than decides, the invalidity of the contract, because of the insufficiency of the publication there made, and proceeds to discuss and determine the effect of the curative act thereon. In that case, however, bids were received on the same day as the date of the paper containing the second publication of the notice. The Court of Appeals of Mahoning, county, in the case of State, ex rel. Boyd, a Taxpayer, v. McMasters, 29 O. C. A., 382, construing this statute, held that the date of receiving bids must be two full calendar weeks subsequent to the date of the first publication. A like construction of a similar statute appears in the same volume in the case of State, ex rel. Ciraci, v. Kehres, page 458. A number of cases have been cited from other states involving statutes varying somewhat in their terms, but are not of material aid to a determination of the meaning of the language of our statute. In many of them the language is such as to indicate, not a period of time to be covered by such notice, but rather the number of insertions thereof in a newspaper, as, for example, “once in each week for four consecutive weeks prior to the day of sale.”
But it is urged that, even if the proceedings were defective in the matter of publication of such notice, such defect has been cured by the act of the General Assembly passed December 18, 1919, appearing in 108 Ohio Laws, pt. 2, p. 1122. This is a so-called curative statute, and provides, in substance, that all contracts entered into by the state through its highway commissioner prior to January 1, 1918, in the proceedings preliminary to which there has been failure on the part of boards or officers of the *418 state or any of its subdivisions to comply -with the provisions of any statute, are, notwithstanding such failure, declared to be valid and binding contracts and proceedings. It further provides that all such contracts are on behalf of the state of Ohio ratified, approved, and confirmed, and that the passage of such act shall not operate to revive, reinstate, or in any manner give rise to any right or claim against the state or any of its subdivisions under or by virtue of any contract, action, or proceeding which has been canceled, vacated, or abandoned by the state or its subdivisions, or to renew any right or claim against the state or its subdivisions under or by virtue of any contract which has been completed or compromised.
The contract in question here was entered into by the parties on September 14,1917. The claimed default therein occurred October 1,1917, and the state highway commissioner completed the improvement required by the terms of the contract November 1, 1918. It is claimed that, by virtue of this so-called curative statute, damages may be awarded the state against the contractor and his surety for failure to perform the contract, although, if the same had been performed, no compensation, either as stipulated therein or upon quantum meruit, could have been recovered because of the invalidity of such contract under the law as it existed when the contract was made and at the time of defendant’s default. That contention presents the question whether, if no damages were recoverable at the time of the breach of such contract, because of its invalidity, the Legislature by a so-called curative provision may confer the right of action upon the state a year or *419 more after the breach of the contract, and after the cause of action, if any there was, accrued. Because of the invalidity of this contract, under authority of the line of cases beginning with Buchanan Bridge Co. v. Campbell, 60 Ohio St., 406, 54 N. E., 372, the contractor at the time of his contract, and at the time he failed and refused to proceed with the improvement thereunder, would not have been entitled to recover any compensation even though he had completed the contract according to its terms, and therefore he may well have refused to proceed on the ground that because of the invalidity of the contract, for the reasons above stated, he could not recover either under the terms of the contract or upon quantum meruit. At that time, and under the law as it then existed, the state could not recover damages from the contractor by reason of his failure or refusal to perform the contract. That is also clear under the rule well established by the line of cases in this state to which reference is above made.
The construction and application of this curative statute urged by counsel for the state would render the same unconstitutional as violative of Section 28, Article II of the Constitution of Ohio, which denies the power of the General Assembly to pass retroactive laws. It is not even claimed that such curative act was passed under the. permissive clause of Section 28, Article II, but it is asserted it was passed because it did not contravene the retroactive clause. The right and authority of the state by such retrospective legislation, both for itself and on behalf of the subdivisions thereof, to waive irregularities and ratify and confirm all contracts theretofore made, notwith *420 standing the failure to comply with any statute, is not questioned, and that must be held to be the purport and effect of this statute, for it cannot create an obligation upon the part of the contractor with no corresponding obligation upon the part of the state. It was enacted at a time when, if given effect, it would be beneficial only to the state and detrimental only to the contractor. It would not only validate a contract which was invalid when made, but would do so a year or more subsequent to the time the relations of the parties had ceased.
The record discloses that on October 1, 1917, thq contractor not having entered upon such improvement, the state highway commissioner declared him in default and proceeded to make such improvement, which he completed November 1,1918; therefore any cause of action which he might have had against the contractor and his bond accrued at that time. The statute in question was passed December 18, 1919, filed in the office of the secretary of state January 29, 1920, but did not go into effect until April 28, 1920. This act, if given the effect claimed for it, would result in taking away existing rights as well as creating new liabilities and obligations, and, where retrospective laws are prohibited, acts having such effect are held unconstitutional. (8 Cyc., 1020; Miller v. Hixson, Treas., 64 Ohio St., 39, 59 N. E., 749.) The Constitutions of many of the states do not contain a provision prohibiting retroactive legislation, as does ours; hence decisions cited from those jurisdictions can be given no consideration.
It is further contended that the indemnity company is estopped by the recitals of its bond from asserting that it is not under contract with the state of Ohio to see that the construction work involved *421 in this case is at all events completed within the contract price. A surety company is estopped by the material recitals in a bond which it has executed. The bond in question was furnished and filed at the time of the filing of the bid, June 14, 1917, and not at the time of the execution of the contract. It recited that the principal had filed a written proposal for the construction of the portion of the highway in question, and the obligation provided that, if such proposal were accepted, the contractor should within 10 days after receiving notice thereof enter into a proper contract with the state for the construction and completion of such improvement, and would comply with and perform the terms thereof and complete the improvement in accordance with the plans and specifications which were made a part thereof.
It was held in Russell v. Failor, 1 Ohio St., 327, 59 Am. Dec., 631, that it is the essence of the contract of suretyship that there be a subsisting valid obligation of the principal debtor. The same rule is announced in the syllabus in the case of State, ex rel. Commrs. of Knox County, v. Blake, 2 Ohio St., 147, and it. is there further stated that—
“Whatever, therefore, amounts to a good defense to the original liability of the principal, is a good defense for the sureties when sued upon the collateral undertaking.”
And this rule is universally recognized and applied. It seems clear, therefore, that there is no element of estoppel in this case.

Judgment affirmed.

Marshall, C. J., Wanamaker, Robinson, Jones and Allen, JJ., concur.